JS-6

Elizabeth L. Loeb (NY Bar No. 2294809)
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington D.C. 20044-7611
(202) 616-8916
elizabeth.loeb@usdoj.gov

*Attorney for Plaintiff United States of America*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Civil Action No. 5:21-cv-01249** |
| **Plaintiff,** | |
| **vs.** | **CONSENT DECREE** |
| **ADVANCED FLOW ENGINEERING, INC.,** | |
| **Defendant** | |

I

## <u>TABLE OF CONTENTS</u>

I.     JURISDICTION AND VENUE ........................................................2
II.    APPLICABILITY.............................................................................3
III.   DEFINITIONS .................................................................................4
IV.    CIVIL PENALTIES .......................................................................11
V.     COMPLIANCE REQUIREMENTS ..............................................13
VI.    REPORTING REQUIREMENTS ..................................................18
VII.   STIPULATED PENALTIES ..........................................................22
VIII.  FORCE MAJEURE ........................................................................26
IX.    DISPUTE RESOLUTION ..............................................................28
X.     INFORMATION COLLECTION AND RETENTION ....................30
XI.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ....................32
XII.   COSTS ............................................................................................34
XIII.  NOTICES ........................................................................................34
XIV.   EFFECTIVE DATE .......................................................................35
XV.    RETENTION OF JURISDICTION ...............................................35
XVI.   MODIFICATION ...........................................................................36
XVII.  TERMINATION .............................................................................36
XVIII. PUBLIC PARTICIPATION ...........................................................37
XIX.   SIGNATORIES/SERVICE ............................................................37
XX.    INTEGRATION .............................................................................38
XXI.   FINAL JUDGMENT ......................................................................38
XXII.  HEADINGS ....................................................................................38
XXIII. 26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION .....................38
XXIV.  APPENDICES ................................................................................38

II

WHEREAS, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint in this action concurrently with this Consent Decree against Advanced Flow Engineering, Inc. ("Defendant") for violations of the Clean Air Act ("CAA") related to Defendant's manufacture, sale and offer to sell aftermarket products that bypass, defeat, or render inoperative emission controls installed on Motor Vehicles or Motor Vehicle Engines in violation of Section 203 of the CAA;

WHEREAS, Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), prohibits any person from manufacturing, selling, offering for sale, or installing, any part or component intended for use with, or as part of, any Motor Vehicle or Motor Vehicle Engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a Motor Vehicle or Motor Vehicle Engine in compliance with regulations under Title II of the CAA, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use;

WHEREAS, the Complaint alleges that Defendant manufactured, sold, and/or offered to sell numerous subject aftermarket performance products, the effect of which is to bypass, defeat, or render inoperative a device or element of design installed on or in Motor Vehicles or Motor Vehicle Engines to control the emission of pollutants in violation of Section 203(a)(3)(B) of the CAA;

WHEREAS, the United States has reviewed Financial Information regarding Defendant's financial ability to pay a civil penalty in this action and to finance the requirements of this Consent Decree. The United States has determined that Defendant, which currently has approximately 170 employees, has limited financial ability to pay a civil penalty in this action.

1

WHEREAS, Defendant does not admit liability for any violations alleged in the Complaint;

WHEREAS, the United States' Complaint seeks injunctive relief and the assessment of civil penalties; and

WHEREAS, the United States and Defendant (collectively, the "Parties") recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest;

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), and with the consent of the parties, it is hereby ADJUDGED, ORDERED, AND DECREED as follows:

## I.    **JURISDICTION AND VENUE**

1.    The Court has jurisdiction over the subject matter of this action and the Parties pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and Sections 204 and 205 of the CAA, 42 U.S.C. §§ 7523 and 7524.

2.    Venue in this Court is proper pursuant to Sections 204 and 205 of the CAA, 42 U.S.C. §§ 7523 and 7524, and 28 U.S.C. §§ 1391(b) and 1395(a).  For purposes of this Consent Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree or such action and over it, and consents to venue in this judicial district.  For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Sections 203, 204, and 205 of the CAA, 42 U.S.C. §§ 7522, 7523, and 7524.

## II.   **APPLICABILITY**

3.    The obligations of this Consent Decree are binding upon the United States, and apply to and are binding upon Defendant and any other entity majority-owned or operated by Defendant that is engaged in selling or manufacturing the Subject Products and on any successors, assigns or other entities or persons otherwise bound by law.

4.    No transfer of ownership or operation of any of Defendant's business, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented unless (a) the transferee agrees to undertake the obligations required by this Decree and to be substituted for the Defendant as a Party under the Decree and thus be bound by the terms thereof, (b) the United States consents to relieve Defendant of its obligations, and (c) the Court approves the substitution.  The United States may refuse to approve the substitution of the transferee for any Defendant if it determines that the proposed transferee does not have the financial or technical ability to comply with the requirements of the Decree.  At least 30 Days prior to any transfer of ownership or operation of any of Defendant's business, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA and to the United States in accordance with Section XIII (Notices).  Any attempt to transfer ownership or operation of any Defendant's business, without complying with this Paragraph, constitutes a violation of this Decree.

5.    Within 30 Days of the Effective Date, Defendant shall provide a copy of this Consent Decree (including all Appendices) to all officers, directors, employees and agents of the Defendant whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained

to perform work required under this Consent Decree.  Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.     In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.     **DEFINITIONS**

7.     Terms used in this Consent Decree that are defined in the CAA or in regulations promulgated in accordance with the CAA shall have the meanings assigned to them in the CAA or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.     "Auxiliary Emission Control Device" or "AECD" shall mean any element of design of a Motor Vehicle or Motor Vehicle Engine that senses temperature, motive speed, engine RPM, transmission gear, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of a Motor Vehicle's emission control system.  *See* 40 C.F.R. § 1037.801.

b.     "Authorized Dealer" means any distributor authorized by Defendant to sell Products.

c.     "CAA" means the Clean Air Act, as amended, 42 U.S.C. § 7401 *et seq*.

d.     "CARB Executive Order" or "CARB EO" means an official exemption issued by the California Air Resources Board ("CARB") exempting an aftermarket Product from the prohibitions of Section 27156 of the California Vehicle Code.

e.     "Complaint" means the complaint filed by the United States in

4

this action.

f.       "Consent Decree" or "Decree" means this Consent Decree and all appendices attached hereto and identified in Section XXIV.

g.       "Date of Lodging" means the day that this Consent Decree was lodged with the Court for public comment pursuant to Section XVIII.

h.       "Day" means a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

i.       "Defendant" means Advanced Flow Engineering, Inc. an S corporation with its principal place of business in Corona, California.

j.       "Diesel Oxidation Catalyst" or "DOC" means any oxidation catalyst used to reduce emissions from diesel-fueled vehicles and equipment, including all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations, and other Emission-related Elements of Design that collectively constitute the system for implementing this emissions control strategy.

k.       "Diesel Particulate Filter System" or "DPF" means all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations, and other Emission-related Elements of Design that collectively constitute the system for controlling emissions of particulate matter by trapping such particulates in a filter and periodically oxidizing them through thermal regeneration of the filter.

l.       "Effective Date" shall have the definition provided in Section XIV.

m.       "Emissions-Related Calibrations" means software calibrations programed and installed by the OEM in Motor Vehicles and/or Motor Vehicle Engines for parameters that can affect emissions including but not limited to the

following calibrations:

    i.    calibrations for parameters that affect the operation of the EGR System including EGR flowrate and EGR cooler bypassing;

    ii.    calibrations for parameters that affect the operation of the DPF, DOC, SCR, and/or or NAC;

    iii.    calibrations for parameters that affect engine combustion, performance, and operation, including air-fuel ratio, fuel injection timing, fuel quantity, fuel injection pulse width, fuel injection pressure, fuel injection mass, multiple injection patterns, open loop/closed loop functionality and control, ignition control – (spark timing), boost pressure, limiters (fuel, torque, smoke, etc.), manifold pressure, camshaft timing, electronic throttle control, engine air flow characteristics, mass air flow rate, turbocharger/supercharger air flow, and other parameters disclosed on the certificate of conformity ("COC") which are elements of the OEM's strategy to control the formation of pollutants in the engine; and

    iv.    calibrations for parameters that affect OBD detection, warning and recording of malfunctions.

    n.    "Emissions-related Elements of Design" means any part, device, computer software, electronic control system, computer logic, calibration installed on or in a Motor Vehicle or Motor Vehicle Engine by an OEM for the purpose of controlling emissions or which must function in accordance with the OEM's design to assure continued vehicle emission compliance.  Emissions-related Elements of Design include but are not limited to:

    i.    The EGR system;

    ii.    DOCs;

    iii.    The SCR system;

    iv.    DPFs;

    v.    NAC;

      vi.     The OBD system;

      vii.    Diagnostic Trouble Codes;

      viii.   Oxygen sensors;

      ix.     NOx sensors;

      x.      Ammonia sensors;

      xi.     PM sensors;

      xii.    Urea quality sensors;

      xiii.   Exhaust gas temperature sensors;

      xiv.   DPF differential pressure sensor;

      xv.    AECDs;

      xvi.   Emissions-Related Calibrations;

      xvii.  The routing of crankcase emissions to the engine; and

      xviii. All other parts, devices or elements of design installed in compliance with Title II of the CAA and its regulations.

    o.    "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies.

    p.    "Exempt Product" means a Product that is exempt from requirements of this Consent Decree because it is (1) a Product that is listed on Appendix B, or (2) a Product that meets the requirements in Appendix C.

    q.    "Exhaust Gas Recirculation" or "EGR" or "EGR System" means all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations and other Emission-related Elements of Design that collectively constitute the system for controlling $NO_x$ emissions by recirculating a portion of engine exhaust gas into the cylinders of an engine.  EGR includes the EGR cooler, throttle valve, crossover pipe into the intake manifold, the EGR ports in the exhaust manifold, and the temperature and/or pressure sensors used to detect the amount of exhaust gas being recirculated back into the engine.

    r.    "Financial Information" means the documentation identified in

7

Appendix D, which was submitted to the United States by Defendant and as to which Defendant asserts includes Confidential Business Information.

s.    "Identified Subject Products" means the Motor Vehicle or Motor Vehicle Engine parts, components, and Products identified in Appendix A.

t.    "Interest" means the Prime Rate on the date 14 days before the payment is made.

u.    "Marketing Materials" means all materials or communications containing or conveying information that is generated or used by the Defendant, to discuss, describe, or explain any of Defendant's Products, in any form, including but not limited to electronic and hardcopy information used in advertisements, training materials, online videos (e.g., YouTube), social media webpages (e.g., Facebook, Instagram) and user manuals or guides.

v.    "Motor Vehicle" shall mean any self-propelled vehicle designed for transporting persons or property on a street or highway.

w.    "Motor Vehicle Engine" shall mean an internal combustion engine that powers a Motor Vehicle.

x.    "$NO_x$ Adsorber Catalyst" or "NAC" means the strategy for controlling $NO_x$ emissions from partial lean burn gasoline engines and from diesel engines by adsorbing the $NO_x$ emissions onto a catalyst substrate during lean combustion followed by periodic regeneration of the substrate during short, richer-than-stoichiometric combustion, together with all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations and other Emission-related Elements of Design that collectively constitute the system for implementing this emissions control strategy.

y.    "On-Board Diagnostics" or "OBD" means the strategy for monitoring the functions and performance of the emission control system and all other systems and components that must be monitored under 42 U.S.C. § 7521(m)

8

of the CAA and applicable regulations including 40 C.F.R. §§ 86.007-17, 86.010-18, 1806-05 for identifying and detecting malfunctions of such monitored systems and components, and for alerting the driver of such potential malfunctions by illuminating the malfunction indicator light ("MIL"), together with all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations and other Emission-related Elements of Design that collectively constitute the system for implementing this strategy.

z.      "Original Equipment Manufacturer" or "OEM" means the manufacturer responsible for the design and production of a Motor Vehicle or Motor Vehicle Engine.

aa.     "Other Subject Products" means any Product that is not an Exempt Product and that meets any of the following criteria:

    i.      any Product that is materially similar in terms of function to a Product identified in Appendix A;

    ii.     any Product that enables or requires the removal of, overwrites, bypasses, defeats, renders inoperative or deletes the function of one or more Emission-related Elements of Design on a Motor Vehicle or Motor Vehicle Engine;

    iii.    any Product intended for use with, or as part of, any Motor Vehicle, a principal effect of which is to bypass, defeat, or render inoperative any device or element of design installed on or in a Motor Vehicle or Motor Vehicle engine in compliance with regulations under the CAA.

bb.     "Paragraph" means a portion of this Decree identified by an Arabic numeral, including any subparagraphs thereof.

cc.     "Parties" means the United States and the Defendant.

dd.     "Permanently Delete and/or Destroy" means: (1) in the case of hardware, to crush the device and all of its parts or components to render them

9

useless; and (2) in the case of software, tunes, calibrations or other programming, to completely and permanently erase all programming and information.

ee.     "Product" means any part or component (including hardware, software, tunes, programming, calibrations, or a device on which such software, tunes, calibrations or other programming resides) intended for use with, or as part of, a Motor Vehicle or Motor Vehicle Engine.

ff.     "Section" means a portion of this Decree identified by a roman numeral, including all Paragraphs thereunder.

gg.     "Selective Catalytic Reduction System" or "SCR" means all hardware, components, parts, sensors, sub-assemblies, software, AECDs, calibrations, and other elements of design that collectively constitute the system for controlling $NO_x$ emissions through catalytic reduction using an ammonia-based diesel exhaust fluid ("DEF") as the reducing agent, including without limitation all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations, and other Emission-related Elements of Design that collectively constitute the system for implementing this emissions control strategy including but not limited to (1) the DEF storage tank; (2) the DEF injectors, (3) the dosing control unit, and (4) the SCR catalysts assembly.

hh.     "Subject Products" means, collectively, all "Identified Subject Product(s)" and all "Other Subject Product(s)."

ii.     "Technical Support" means a range of services offered by Defendant to customers or dealers involving the provision of assistance or advice on the use, installation, or repair of Products.  Technical Support includes, but is not limited to, Product owners and user's manuals and answers to specific questions provided by phone, on-line, and in person.

jj.     "United States" means the United States of America, acting on behalf of EPA.

10

## IV.   CIVIL PENALTIES

8.     Defendant provided Financial Information, which is generally described in Appendix D, that demonstrates that Defendant has a limited ability to pay civil penalties at this time.  Defendant shall pay, in two installments, the sum of $250,000 as civil penalties, together with Interest accruing from the Date of Lodging.  The first installment shall be paid within 30 Days after the Effective Date.  The second installment shall be paid one year after the Effective Date.

9.     Defendant shall pay the civil penalties and Interest due by FedWire Electronic Funds Transfer ("EFT") to the United States Department of Justice in accordance with written instructions to be provided to Defendant, following entry of the Consent Decree, by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Middle District of North Carolina.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions to:

> Adam M. Kushner
> Hogan Lovells LLP
> 555 Thirteenth Street, NW
> Washington, DC 20004
> adam.kushner@hoganlovells.com

on behalf of Defendant.  Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with Section XIII (Notices).

10.     At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to the United States via email or regular mail in

accordance with Section XIII (Notices); and (iii) to EPA in accordance with Section XIII.  Such notice shall state that the payment is for the civil penalties owed pursuant to the Consent Decree in *United States v. Advanced Flow Engineering, Inc.* and shall reference the civil action number, CDCS Number, and DOJ case number 90-5-2-1- 12079.

11.   <u>Acceleration of Payments</u>.

a.   Defendant shall have the option (at its sole discretion) to pay any of the amounts required by Paragraph 8 above before they are due.  Any such pre-payment shall include the accrued but unpaid Interest calculated in accordance with Paragraph 8 above.

b.   If the Defendant fails to pay any payment required by Paragraph 8 above by the required due date, all remaining payments and all accrued Interest shall become due immediately upon such failure.  Interest shall continue to accrue on any unpaid amounts until the total amount due has been received.  Interest required by this Paragraph shall be in addition to any stipulated penalties owed pursuant to Paragraph 33.

c.   If there has been a change in control of Defendant in the form of a takeover bid, tender offer or other merger transaction (however effected), that has become unconditional in all respects or otherwise effective, under which a third party or group of parties acting together acquires a majority interest in Defendant, the United States may elect to accelerate the schedule for all or any of the payments required by Paragraph 8 in which case the accelerated payments shall become due and owing 120 Days after service of notice of such election, or any other time that the Parties may jointly agree upon.

d.   If the Defendant becomes a debtor in a case filed under Title 11 of the United States Code, 11 U.S.C. 101 et seq., the schedule for all or any of the payments required by Paragraphs 8 and 11 shall be automatically accelerated and

become due and owing and shall be paid in the manner specified by Paragraph 9 unless the Parties agree otherwise.

12.     Defendant shall not deduct any penalties or Interest paid under this Decree in accordance with this Section or Section VII (Stipulated Penalties) in calculating federal income tax.

## V.     <u>COMPLIANCE REQUIREMENTS</u>

13.     The following compliance paragraphs apply to all Subject Products.

14.     Defendant shall comply with Paragraphs 15 through 19 below beginning on the dates indicated below for the type of Subject Product indicated, and continuing thereafter.

| Compliance Date | Types of Subject Products |
| --- | --- |
| July 1, 2019 | Subject Products on Appendix A Category 1 |
| September 1, 2019 | Subject Products on Appendix A Category 2 |
| November 1, 2019 | Subject Products on Appendix A Categories 3 and 4 |
| The Effective Date | All Other Subject Products |

15.     Defendant shall not manufacture, sell, offer to sell, distribute, or install in a Motor Vehicle or Motor Vehicle Engine any Subject Product.

16.     Defendant shall not remove or render inoperative any Emissions-related Element of Design installed on or in a Motor Vehicle or Motor Vehicle Engine.

17.     Notwithstanding the foregoing, if, following the Effective Date, an amendment to the CAA or other legislation is enacted into law, or EPA promulgates rules that expressly pertain to modifications to Motor Vehicles or

Motor Vehicle Engines and/or the sale of parts or software for the purpose of use in competition motorsports, this Consent Decree does not prohibit Defendant from manufacturing, selling, offering to sell, and/or installing Subject Products consistent with such new statute, or rule and Paragraphs 18 and 21 shall no longer apply with respect to those Subject Products.

18. <u>Other Compliance Requirements</u>.  Unless a different date is indicated below, by no later than the dates set forth in Paragraph 14 above and continuing thereafter for the types of Subject Products indicated, Defendant shall comply with the following requirements.

a. <u>Deletion and Destruction of Subject Products</u>.  Defendant shall Permanently Delete and/or Destroy all Subject Products in its possession and control.

  i. Defendant shall provide to EPA (in accordance with Section XIII (Notices)) a certified statement in accordance with Paragraph 27 below that all Subject Products have been destroyed and: (1) as to hardware, a record of the serial number of each hardware device, if applicable, that was destroyed and the date of such destruction; and (2) as to software, tunes, calibrations or other programming: a description of the software, tunes, calibrations or other programming that was permanently erased or deleted and the date of such erasure or deletion ("Destruction Report").

  ii. As of the Effective Date, Defendant has provided the Destruction Reports for Categories 1, 2, 3, and 4.  No later than 30 Days after the Effective Date, Defendant shall provide the Destruction Report for all other Subject Products, not included in Categories 1 – 4.

  iii. If Subject Products are returned to aFe after submission of the Destruction Reports, aFe will include a Destruction Report for those Subject Projects in its semi-annual reports required by Paragraph 23.

b.      <u>Ceasing Technical Support</u>.  Defendant shall permanently cease offering or making available any Technical Support or other information (including Marketing Materials) pertaining to the installation, manufacture, sale, use, or repair of any Subject Product.

c.      <u>Denial of Warranty Claims</u>.  Defendant shall deny all warranty claims pertaining to any Subject Product.

d.      <u>Notification to Authorized Dealers</u>.  No later than 30 Days after the Effective Date, Defendant shall (a) notify all Authorized Dealers that Defendant is no longer honoring warranty claims pertaining to any Subject Product and that Defendant is no longer supplying Technical Support pertaining to the installation, manufacture, sale, use or repair of any Subject Product; and (b) instruct all Authorized Dealers to refuse to honor any warranty claims pertaining to any Subject Product and to refuse to supply any Technical Support or other information (including Marketing Materials) pertaining to the installation, manufacture, sale, use, or repair of any Subject Product.

e.      <u>Prohibition on Transfer of Intellectual Property</u>.  Defendant shall not offer for sale, sell, convey, or otherwise transfer in any way the design, source code, technology, manufacturing process, or other intellectual property associated with any Subject Product, except as part of an application for a CARB EO or in response to a request from EPA, DOJ or another federal or state law enforcement office.

f.      <u>Revision of Marketing Materials</u>.  Defendant shall revise all Marketing Materials to ensure that such materials do not include any information, including but not limited to instructions or demonstrations, that pertains or relates in any way to replacing, overwriting, deleting, bypassing, defeating, or rendering inoperative any emission control device or Emissions-related Element of Design.

15

g.    Notice to all Identified Authorized Dealers and Subject Product Customers.  No later than 30 Days after the Effective Date, Defendant shall transmit a notice that includes the language specified in Appendix E to (1) each Authorized Dealer and (2) each known end-use customer to which Defendant sold an Identified Subject Product on or after January 1, 2013.

h.    Notice to Employees.  No later than 30 Days after the Effective Date, Defendant shall post a written notice of applicable Clean Air Act prohibitions, incorporating language contained in Appendix F to this Decree, in conspicuous locations where Defendant's officers and employees will regularly encounter it.  These postings must include both hardcopy postings in a physical location and electronic postings either on-line or via email to those employees with email accounts.

i.    Officers and Employees Forfeit of Subject Products.  No later than 30 Days after the Effective Date, Defendant shall request that each of its employees and shall require that each of its officers forfeit any Subject Product in his or her possession, or installed on any Motor Vehicle owned or operated by him or her or under his or her control, by returning such Subject Product to an individual designated by Defendant and identified to EPA for such purpose. Defendant shall Permanently Delete and/or Destroy all such Subject Products within 30 days of receipt.

19.    Notwithstanding the requirements of Paragraphs 18.a-i above, Defendant and any Authorized Dealers may assist customers in removing any Subject Products from vehicles on which they were installed and returning such vehicles to the OEM settings.  Defendant and any Authorized Dealers may provide Technical Support to customers that does not involve the installation, manufacture, sale, use or repair of Subject Products.

16

20.     <u>Training of Employees</u>.  No later than 30 Days after the Effective Date, and continuing on an annual basis thereafter, Defendant shall conduct a Clean Air Act Compliance Training Program for all officers, employees, contractors and consultants whose responsibilities involve the manufacture, marketing, repair, or sale of exhaust or tuning Products and those who supervise such employees (hereinafter "trainees").  Prior to the first program, Defendant shall provide a copy of all training materials to EPA for comment.  The Training Program shall:

    a.     Include detailed information regarding:

        i.     The Compliance Requirements set forth in Section V of this Consent Decree;

        ii.    The acts prohibited by Section 203(a)(3) of the CAA, <u>42 U.S.C. § 7522(a)(3),</u> including the statutory language of Section 203(a)(3);

        iii.   The categories of potentially liable persons under the CAA, including individuals;

        iv.    The relevant maximum civil penalties for each violation of Section 203(a)(3)(A) and 203(a)(3)(B), as adjusted for inflation in 40 C.F.R. Part 19; and

        v.     The acts prohibited by Section 113(c)(2) of the CAA, <u>42 U.S.C. § 7413(c)(2),</u> including the statutory language of that Section and the criminal penalties set forth therein.

    b.     Be conducted in person;

    c.     Provide the trainees with a written summary of all training content, including the information required in Paragraph 20; and

    d.     Require all trainees to acknowledge, in writing, that they participated in the training session and received a written summary of all content as required by Paragraph 20.c.

21.     Beginning on the Effective Date, Defendant shall not;

         a.     possess any ownership or interest in any person or entity that Defendant knows, or with reasonable diligence should know, manufactures, sells, offers to sell, distributes or installs in a Motor Vehicle or Motor Vehicle Engine any Subject Product in the United States;

         b.     assist any person or entity with the manufacture, sell, offer to sell, distribution, or installation of any Subject Product in a Motor Vehicle or Motor Vehicle Engine in the United States; or

         c.     earn any income from the distribution or installation of any Subject Product in a Motor Vehicle or Motor Vehicle Engine in the United States.

22.     <u>Decree Not a Compliance Determination</u>.  Defendant shall not state or imply in any way that, as a result of this Consent Decree, any of its Products are covered by a compliance determination (or similar designation) from EPA.

## VI.     **REPORTING REQUIREMENTS**

23.     By January 31st and July 31st of each year after the Effective Date, and continuing on a semi-annual basis until termination of this Decree, and in addition to any other express reporting requirements of this Decree, Defendant shall submit a semi-annual progress report for the preceding six months.  The semi-annual progress report shall include, but is not limited to, the following:

         a.     A statement regarding the status of the payment of (i) the civil penalties and associated Interest pursuant to Section IV and (ii) any stipulated penalties owing pursuant to Section VII;

         b.     A complete copy of any CARB EO application submitted during the reporting period for any Product manufactured or offered for sale by Defendant, including all emission test data;

         c.     A complete copy of any CARB EO obtained during the reporting period;

18

d.      As to Subject Products that were Permanently Deleted and/or Destroyed pursuant to Paragraph 18.a during the reporting period, a list of all hardware Products, including Product names, type, serial numbers, and date of destruction; and a list of all software, data, or other information that was Permanently Deleted and/or Destroyed, including the type of software, data or other information and the date of destruction or deletion;

e.      For any product authorized according to Paragraph 17 above that is manufactured, sold, offered for sale, or installed during the reporting period, (i) the relevant new law or regulation; (ii) the product name, type, and manufacture volume and sales volume; (iii) a narrative description of how the product affects the Motor Vehicle or Motor Vehicle Engine, including what engine parameters or other calibrations are affected and how the product affects the On-Board Diagnostics; (iv) a narrative description of why Defendant believes the product is permitted to be manufactured, sold or offered for sale by the relevant new law or regulation.

f.      A list of all Authorized Dealers to whom Defendant provided instructions pursuant to Paragraph 18.d during the reporting period and a copy of any such instructions provided;

g.      A list of all Authorized Dealers and end-use customers to whom Defendant provided a notification pursuant to Paragraph 18.g during the reporting period and a copy of any such notification provided;

h.      A copy of the written notice required to be posted pursuant to Paragraph 18.h;

i.      A list of all Products forfeited in accordance with Paragraph 18.i during the reporting period, the name of the individual to whom the Products were delivered for forfeiture, and documentation of the destruction or deletion of such Products as set forth in Paragraph 18.a;

19

j.        A list of all officers, employees, contractors and consultants who participated in the Clean Air Act Compliance Training Program during the reporting period, pursuant to Paragraph 20 and copies of the training acknowledgments signed by the participants;

k.        A list of the following Products that were manufactured or sold by Defendant; and the quantities manufactured or sold by Defendant:  (1) Identified Subject Products, (2) Other Subject Products, and (3) Exempt Products except those listed in Appendix B; and

l.        A description of any noncompliance with the requirements of this Consent Decree (including all Appendices) during the reporting period, including an explanation of the violation's likely cause and of the specific remedial steps taken, or to be taken, to resolve and/or minimize such violation, and the specific steps to be taken to prevent such further violations.

24.    If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify the United States of such violation and its likely duration, in writing, within 10 business Days of the Day Defendant first became aware of the violation, with an explanation of the violation's likely cause and of the specific remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report along with the reason(s) why the violation cannot be fully explained.  Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant became aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendant of the obligation to provide the notice required by Section VIII (Force Majeure).

25.     Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Decree, may pose an immediate threat to public health or welfare or to the environment, Defendant shall notify EPA orally or by electronic means as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

26.     All reports shall be submitted to the persons designated in Section XIII (Notices) and shall include the civil action number of this case and the DOJ case number, 90-5-2-1-11963.

27.     Each report or other submission to EPA required by this Consent Decree shall be signed by an officer of Defendant and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

28.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

29.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the CAA or implementing

21

regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

30.     Any information provided in accordance with this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII.     STIPULATED PENALTIES

31.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified in the table below, unless excused under Section VIII (Force Majeure), or reduced or waived by the United States pursuant to Paragraph 36.  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

| Consent Decree Violation | Stipulated Penalty Per Violation per Day or Other Measure as Indicated |
|---|---|
| Manufacture, sale, offer to sell, distribution, or installation of any Subject Product, in violation of the requirements of Paragraph 15. | For the first 100 Subject Products, $2,500 per unit of Subject Product manufactured, sold, or installed, or two times the gross amount received for each unit, whichever is greater.  For each Subject Product thereafter, $4,500 per unit of Subject Product Subject Product manufactured, sold, or installed, or two times the gross amount received for each unit, whichever is greater. |
| Failure to comply with the requirements of Paragraph 18.a (Destruction of All Subject Products) | $500 per Day for the first 15 Days of noncompliance; $1000 per Day for the 16th through 30th Days of |

| | noncompliance; and $2000 per Day thereafter. |
|---|---|
| Failure to comply with the requirements of Paragraph 18.b (Prohibition on Technical Support for all Subject Products) | $2,500 per instance of technical support. |
| Failure to comply with the requirements of Paragraphs 18.c and d (Instruction to Authorized Dealers to Refuse Technical Service and Deny Warranty Claims) | $350 per Day for the first 15 Days of noncompliance; $1,000 per Day for the 16th through 30th Days of noncompliance; and $2,500 per Day thereafter. |
| Failure to comply with the requirements of Paragraph 18.e (Prohibition on Transfer of Intellectual Property) | $50,000 per transfer or two times the gross amount received from each transfer, whichever is greater. |
| Failure to comply with the requirements of Paragraph 18.f (Revision of Marketing Materials) | $350 per Day for the first 15 Days of noncompliance; $1,000 per Day for the 16th through 30th Days of noncompliance; and $2,500 per Day thereafter. |
| Failure to comply with the requirements of Paragraph 18.g (Notice to all Identified Subject Product Customers) | $2,000 per customer or Dealer. |
| Failure to comply with the requirements of Paragraph 18.h (Notice to Employees) | $350 per Day for the first 30 Days of noncompliance; and $2,000 per Day thereafter. |
| Failure to comply with the requirements of Paragraph 18.i (Request/Requirement of Officers and Employees to Forfeit Subject Products) | $350 per Day for the first 30 Days of noncompliance; and $4,000 per Day thereafter. |
| Failure to comply with the requirements of Paragraph 20 (Training of Employees) | $500 per employee not trained. |
| Violation of any other requirement of this Consent Decree. | $350 per Day for the first 30 Days of noncompliance and $2,500 per Day thereafter. |

32.   <u>Periodic Reports</u>.  If Defendant fails to submit a Semi-Annual Report, or fails to submit a complete Semi-Annual Report, as required by Paragraph 23,

23

Defendant shall pay a stipulated penalty of $500 per Day for the first 30 Days of noncompliance and $2,500 per Day thereafter.

33.     Late Payment of Civil Penalty.  If Defendant fails to pay the civil penalties required to be paid under Section IV (Civil Penalties) when due, Defendant shall pay a stipulated penalty of $1,000 per Day for each Day that the payment is late.

34.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

35.     Defendant shall pay stipulated penalties to the United States within 30 Days of a written demand by the United States, unless Defendant invokes the dispute resolution procedures under Section IX (Dispute Resolution) within the 30-Day period.

36.     Stipulated penalties shall continue to accrue as provided in Paragraph 34 during any Dispute Resolution, but need not be paid until the following:

       a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with Interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

       b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with Interest, within 30 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

24

c.      If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with Interest, within 15 Days of receiving the final appellate court decision.

37.     If Defendant fails to pay stipulated penalties within 30 Days after receiving the United States' written demand, Defendant shall pay Interest on unpaid stipulated penalties as follows:  (a) if Defendant has timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest accrues from the date stipulated penalties are due pursuant to Paragraph 36 until the date of payment; and (b) if Defendant does not timely invoke dispute resolution, Interest accrues from Defendant's receipt of the written demand pursuant to Paragraph 35 until the date of payment. Nothing in this Paragraph limits the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties or Interest.

38.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

39.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraphs 9-10, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

40.     The payment of stipulated penalties and/or Interest pursuant to this Section shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

41.     Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XI (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this

Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Decree or applicable law. Where a violation of this Decree is also a violation of relevant statutory or regulatory requirements, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation under the applicable federal requirement.

42.     Obligations Prior to the Effective Date.  Upon the Effective Date, the stipulated penalties provisions of this Decree shall be retroactively enforceable with regard to any and all violations of Section V (Compliance Requirements) that have occurred prior to the Effective Date of this Decree, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

## VIII.     FORCE MAJEURE

43.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, which delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

44.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice by electronic transmission to EPA,

within 72 hours of when Defendant first knew that the event might cause a delay to the addresses provided in Section XIII (Notices).  Within seven Days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare, or the environment.  Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

45.    If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

27

46.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

47.     If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 43 and 44.  If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX.     **DISPUTE RESOLUTION**

48.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

49.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written

agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 10 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

50.    <u>Formal Dispute Resolution</u>.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and supporting documentation relied upon by Defendant.

51.    The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

52.    Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 10 Days of receipt of the United States' Statement of Position under the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.  The motion may not raise any issue not raised in informal dispute

resolution pursuant to Paragraph 49, unless the Plaintiffs raise a new issue of law or fact in the Statement of Position.

53.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

54.     <u>Standard of Review</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 50, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree, and that Defendant is entitled to relief under applicable principles of law.  The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious.

55.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 36.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X.     INFORMATION COLLECTION AND RETENTION

56.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any of Defendant's business facilities, at all reasonable times, upon presentation of credentials, to:

a.     Monitor the progress of activities required under this Consent Decree;

b.     Verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

30

c.       Inspect records and any Product(s) regulated under Title II of the CAA or the regulations promulgated thereunder;

d.       Obtain documentary evidence, including photographs, software, or other data or information; and

e.       Assess Defendant's compliance with this Consent Decree.

57.     Until two years after the termination of this Consent Decree, unless otherwise specified herein, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

58.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA.  Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the following:  (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the

31

document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant.  However, no documents, records, or other information created or generated in accordance with the requirements of this Consent Decree shall be withheld on grounds of privilege.

59.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

60.    This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the Date of Lodging.

61.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree does not limit the rights of the United States to obtain penalties or injunctive relief under the CAA or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 60.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising as a result of Defendant's business or any of Defendant's Products, whether related to the violations addressed in this Consent Decree or otherwise.

62.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to the Defendant's operations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata,

32

collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved under Paragraph 60.

63.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced under any such laws, regulations, or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CAA, or with any other provisions of federal, State, or local laws, regulations, or permits.

64.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

65.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

66.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

67.     The United States' agreement to the amount of the civil penalty required by Paragraph 8 of this Consent Decree is based on the Financial

Information identified in Appendix D. Defendant certifies that the Financial Information submitted to the United States and generally described in Appendix D is true, accurate, and complete.  Defendant seeks to protect this information as Confidential Business Information and shall follow the procedures set forth in 40 C.F.R. Part 2.

## XII.   COSTS

68.   The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to enforce this Consent Decree or collect any portion of the civil penalties or any stipulated penalties due but not paid by Defendant.

## XIII.   NOTICES

69.   Unless otherwise specified in this Decree, whenever notifications, submissions, statements of position, or communications are required by this Consent Decree (referred to as "notices" in this section), they shall be made electronically or as described below, unless such notices are unable to be uploaded to the CDX electronic system (in the case of EPA) or transmitted by email in the case of any other recipient.  For all notices to EPA, Defendant shall register for the CDX electronic system and upload such notices at https://cdx.gov/epa-home.asp. Any notice that cannot be uploaded or electronically transmitted via email shall be provided in writing to the addresses below:

As to the United States by email: eescdcopy.enrd@usdoj.gov
                                      Re: DJ # 90-5-2-1-11994

As to the United States by mail: EES Case Management Unit
                                      Environment and Natural Resources

Division

U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-5-2-1-11963

As to EPA by email:        Brian Riedel
riedel.brian@epa.gov
Re: US v. AFE, Inc.

As to Defendant by email:   Adam Kushner
Adam.kushner@hoganlovells.com
Stuart Miyagishima
smiyagishima@afepower.com

70.     Any Party may, by written notice to the other Parties, change its
designated notice recipients or notice addresses provided above.

71.     Notices submitted under this Section shall be deemed submitted upon
mailing, unless otherwise provided in this Consent Decree or by mutual agreement
of the Parties in writing.

<h3 style="text-align:center">XIV.     <u>EFFECTIVE DATE</u></h3>

72.     The Effective Date of this Consent Decree shall be the date upon
which this Consent Decree is entered by the Court or a motion to enter the Consent
Decree is granted, whichever occurs first, as recorded on the Court's docket.

<h3 style="text-align:center">XV.     <u>RETENTION OF JURISDICTION</u></h3>

73.     The Court shall retain jurisdiction over this case until termination of
this Consent Decree, for the purpose of resolving disputes arising under this
Decree or entering orders modifying this Decree, under Sections IX (Dispute
Resolution) and XVI (Modification), or effectuating or enforcing compliance with
the terms of this Decree.

# XVI.    MODIFICATION

74.    The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

75.    Any disputes concerning modification of this Decree shall be resolved under Section IX (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 54, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

# XVII.    TERMINATION

76.    After Defendant has:  (a) completed the requirements of Paragraphs 18 through 20 for at least four years after the Effective Date; (c) paid the civil penalties required by Section IV, including any accrued Interest; and (d) paid any accrued stipulated penalties determined by the United States to be owing pursuant to Paragraph 31, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied these requirements, together with all necessary supporting documentation.

77.    Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

78.    If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section IX of this Decree.

However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 90 Days after service of its Request for Termination.

## XVIII.   PUBLIC PARTICIPATION

79.   This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XIX.   SIGNATORIES/SERVICE

80.   Each undersigned representative of the Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

81.   This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.  Defendant need not file an answer to the Complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XX.   **INTEGRATION**

82.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than the deliverables that are subsequently submitted pursuant to this Consent Decree, no other document, nor any representation, inducement, agreement, understandings, or promise constitutes any part of this Decree or the settlement it represents.

## XXI.   **FINAL JUDGMENT**

83.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

## XXII.   **HEADINGS**

84.     Headings to the Sections and Subsections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

## XXIII.   **26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION**

85.     For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 162-21(b)(2), performance of Section II (Applicability), Paragraph 5; Section V (Compliance Requirements), Paragraphs 18-20; Section VI (Reporting Requirements), Paragraphs 23, 24, 27; and Section X (Information Collection and Retention), Paragraphs 56 – 58, is restitution, remediation, or required to come into compliance with law.

## XXIV.   **APPENDICES**

86.     The following Appendices are attached to and part of this Consent Decree:

"Appendix A" is a list of Identified Subject Products.

"Appendix B" is a list of Exempt Products.

"Appendix C" is additional criteria for Exempt Products.

"Appendix D" is a general description of the financial information that Defendant submitted to the United States.

"Appendix E" is language to be included in the notice to customers and authorized dealers referenced in Paragraph 18.g.

"Appendix F" is language to be included in the notice to employees referenced in Paragraph 18.h.

Dated and entered this __20th__ day of ___October_____, 2021.

_____
Jesus G. Bernal, U.S. District Judge

39

1

2   We hereby consent to the foregoing Consent Decree in the matter of <u>United States</u>
    <u>v. Advanced Flow Engineering, Inc.</u>, subject to public notice and comment:

3

4                                       FOR THE UNITED STATES OF AMERICA:

5                                       JEAN E. WILLIAMS
6                                       Acting Assistant Attorney General
                                        Environment and Natural Resources Division
7

8   Date July 16 2021

9                                       ELIZABETH L. LOEB
                                        Senior Attorney
10                                      Environmental Enforcement Section
11                                      Environment and Natural Resources Division
                                        U.S. Department of Justice
12                                      Washington, DC  20044-7611

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

40

We hereby consent to the foregoing Consent Decree in the matter of <u>United States</u> <u>v. Advanced Flow Engineering, Inc.</u>, subject to public notice and comment:

FOR THE U.S. ENVIRONMENTAL
PROTECTION AGENCY:

Date: 1/14/2021

ROSEMARIE A. KELLEY
Director, Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
Washington, DC 20460

EVAN BELSER
Director (Acting), Air Enforcement Division
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
Washington, DC 20460

41

We hereby consent to the foregoing Consent Decree in the matter of <u>United States v. Advanced Flow Engineering, Inc.</u>:

Date: _June 29, 2021_

_____

SYLVIA QUAST
Regional Counsel
United States Environmental Protection Agency,
Region 9 San Francisco, CA 94105

Date: _6/29/21_

_____

BRIAN P. RIEDEL
Assistant Regional Counsel
United States Environmental Protection Agency,
Region 9
San Francisco, CA 94105

42

We hereby consent to the entry of the foregoing Consent Decree in the matter of <u>United States v. Advanced Flow Engineering, Inc.,</u> subject to public notice and comment:

FOR DEFENDANT:

Date: 24 JUNE, 2021

43

# APPENDIX A

# Appendix A

| ROW | Part No. | Description | Fuel |
|---|---|---|---|
| 2 | 46-90071 | MAN EGR Cooler Delete Dodge Dsl Trucks 07.5-09 L6 | Diesel |
| 3 | 46-90072 | MAN EGR Cooler Delete Dodge Dsl Trucks 10-12 L6 | Diesel |
| 4 | 46-90076 | EGR Track Kit Ford Dsl Trucks 03-07 V8-6.0L | Diesel |
| 5 | 49-02003 | EXH 4 in TB Dodge Dsl Trucks 04.5-09 L6-5.9L/6.7L | Diesel |
| 6 | 49-02003NM | EXH 4 in TB Dodge Dsl Trucks 04.5-09 L6-5.9L/6.7L | Diesel |
| 7 | 49-02005 | EXH 4 in TB Dodge Dsl Trucks 07.5-12 L6-5.9/6.7L | Diesel |
| 8 | 49-02005NM | EXH 4 in TB Dodge Dsl Trucks 07.5-12 L6-5.9/6.7L | Diesel |
| 9 | 49-02030 | EXH 5 in TB Dodge Dsl Trucks 07.5-12 L6-6.7L | Diesel |
| 10 | 49-02030NM | EXH 5 in TB Dodge Dsl Trucks 07.5-12 L6-6.7L | Diesel |
| 11 | 49-02047 | EXH 5 in TB Dodge Dsl Trucks 13-17 L6-6.7L | Diesel |
| 12 | 49-02047NM | EXH 5in TB; Dodge Dsl Trucks 13-15 L6-6.7L No Tip, CS Susp | Diesel |
| 13 | 49-02047NM-1 | EXH 5 in TB Dodge Dsl Trucks 13-17 L6-6.7L | Diesel |
| 14 | 49-02048NM | EXH 5in TB; Dodge Dsl Trucks 13-15 L6-6.7L No Tip, LS Susp | Diesel |
| 15 | 49-03003 | EXH 4 in TB Ford Dsl Trucks 03-07 V8-6.0L | Diesel |
| 16 | 49-03003NM | EXH 4 in TB Ford Dsl Trucks 03-07 V8-6.0L | Diesel |
| 17 | 49-03004 | EXH 4 in DP-Back Ford Dsl Trucks 08-10 V8-6.4L | Diesel |
| 18 | 49-03004NM | EXH 4 in DP-Back Ford Dsl Trucks 08-10 V8-6.4L | Diesel |
| 19 | 49-03006 | EXH 4 in DP-Back Ford Dsl Trucks 11-16 V8-6.7L | Diesel |
| 20 | 49-03006NM | EXH 4 in DP-Back Ford Dsl Trucks 11-16 V8-6.7L | Diesel |
| 21 | 49-03010 | EXH 4 in RP Ford Dsl Trucks 08-10 V8-6.4L | Diesel |
| 22 | 49-03011 | EXH 4 in RP Ford Dsl Trucks 08-10 V8-6.4L | Diesel |
| 23 | 49-03012 | EXH 4 in RP Ford Dsl Trucks 11-16 V8-6.7L | Diesel |
| 24 | 49-03093 | EXH 5 in DP-Back Ford Dsl Trucks 17-19 V8-6.7L | Diesel |
| 25 | 49-03093NM | EXH 5 in DP-Back Ford Dsl Trucks 17-19 V8-6.7L | Diesel |
| 26 | 49-04002 | EXH 4 in DP-Back GM Dsl Trucks 07.5-10 V8-6.6L | Diesel |
| 27 | 49-04002NM | EXH 4 in DP-Back GM Dsl Trucks 07.5-10 V8-6.6L | Diesel |
| 28 | 49-04003 | EXH 4 in DP-Back GM Dsl Trucks 11-15 V8-6.6L | Diesel |
| 29 | 49-04003NM | EXH 4 in DP-Back GM Dsl Trucks 11-15 V8-6.6L | Diesel |
| 30 | 49-04022 | EXH 4 in RP GM Dsl Trucks 11-16 V8-6.6L | Diesel |
| 31 | 49-04035 | EXH 5in DP-Back; GM Dsl Trucks 11-14 V8-6.6L No Mflr No Tip | Diesel |
| 32 | 49-04053 | EXH 4 in DP-Back GM Dsl Trk 15.5-16 6.6L no tip | Diesel |
| 33 | 49-04053NM | EXH 4 in DP-Back GM Dsl Trk 15.5-16 6.6L | Diesel |
| 34 | 49-14017NM | EXH 4 in DP-Back GM Dsl Trucks 07.5-10 V8-6.6L | Diesel |
| 35 | 49-22013RP | EXH 4 in RP RAM Dsl Cab Chassis 11-12 L6-6.7L | Diesel |
| 36 | 49-22018RP | EXH 4 in RP RAM Dsl Cab Chassis 07-10 L6-6.7L | Diesel |
| 37 | 49-23013NM | EXH 4 in DP-Back Ford Dsl Cab Chassis 08-10 6.4L | Diesel |
| 38 | 49-24010NM | EXH 3 in TB GM Colorado/Canyon 16-19 I4-2.8L (td) | Diesel |
| 39 | 49-42030-P | EXH 5 in TB Dodge Dsl Trucks 07.5-12 L6-6.7L | Diesel |
| 40 | 49-42047-1B | EXH 5in TB Dodge Dsl Trucks 13-17 L6-6.7L blk tip | Diesel |
| 41 | 49-42047-1P | EXH 5in TB Dodge Dsl Trucks 13-17 L6-6.7L pol tip | Diesel |
| 42 | 49-42047-B | EXH 5in TB; Dodge Dsl Trucks 13-15 L6-6.7L Blk Tip, CS Susp | Diesel |
| 43 | 49-42047-P | EXH 5in TB; Dodge Dsl Trucks 13-15 L6-6.7L Pol Tip, CS Susp | Diesel |
| 44 | 49-42048-B | EXH 5in TB; Dodge Dsl Trucks 13-15 L6-6.7L Blk Tip, LS Susp | Diesel |

# Appendix A

| ROW | Part No. | Description | Fuel |
|---|---|---|---|
| 45 | 49-43023 | EXH 4in DP-Back; Ford Dsl Trucks 08-10 V8-6.4L Pol Tip No Mflr | Diesel |
| 46 | 49-43030 | EXH 4in DP-Back; Ford Dsl Trucks 08-10 V8-6.4L Pol Tip No Mflr | Diesel |
| 47 | 49-43035 | EXH 4in DP-Back; Ford Dsl Trucks 11-14 V8-6.7L No Mflr Pol Tip | Diesel |
| 48 | 49-43093 | EXH 5 in DP-Back Ford Dsl Trucks 17-19 V8-6.7L | Diesel |
| 49 | 49-43093-B | EXH 5 in DP-Back Ford Dsl Trucks 17-19 V8-6.7L | Diesel |
| 50 | 49-43093-P | EXH 5 in DP-Back Ford Dsl Trucks 17-19 V8-6.7L | Diesel |
| 51 | 49-44017-B | EXH 4 in DP-Bk GM Dsl Trk 07.5-10 V8-6.6L blk tip | Diesel |
| 52 | 49-44017-P | EXH 4 in DP-Bk GM Dsl Trk 07.5-10 V8-6.6L pol tip | Diesel |
| 53 | 49-44035 | EXH 5in DP-Back; GM Dsl Trucks 11-14 V8-6.6L No Mflr/No Tip | Diesel |
| 54 | 49-44053-B | EXH 4 in DP-Back GM Dsl Trk 15.5-16 6.6L blk tip | Diesel |
| 55 | 49-44053-P | EXH 4 in DP-Back GM Dsl Trk 15.5-16 6.6L pol tip | Diesel |
| 56 | 49-44075-B | EXH 3 in TB GM Colorado/Canyon 16-19 I4-2.8L (td) | Diesel |
| 57 | 49-44075NM | EXH 3 in TB GM Colorado/Canyon 16-19 I4-2.8L (td) | Diesel |
| 58 | 49-44075-P | EXH 3 in TB GM Colorado/Canyon 16-19 I4-2.8L (td) | Diesel |
| 59 | 49-52009RP | EXH 4 in RP RAM Dsl Cab Chassis 11-12 L6-6.7L | Diesel |
| 60 | 49-52010RP | EXH 4 in RP RAM Dsl Cab Chassis 11-12 L6-6.7L | Diesel |
| 61 | 49-52012RP | EXH 4 in RP RAM Dsl Cab Chassis 13-18 L6-6.7L | Diesel |
| 62 | 49-52013RP | EXH 4 in RP RAM Dsl Cab Chassis 11-12 L6-6.7L | Diesel |
| 63 | 49-52014RP | EXH 4 in RP w/ Muffler RAM Dsl Cab Chassis 11-12 L6-6.7L | Diesel |
| 64 | 49-52015RP | EXH 4 in RP RAM Dsl Cab Chassis 13-18 L6-6.7L | Diesel |
| 65 | 49-52018RP | EXH 4 in RP RAM Dsl Cab Chassis 07.5-10 L6-6.7L | Diesel |
| 66 | 49-53013NM | EXH 4 in DP-Back Ford Dsl Cab Chassis 08-10 6.4L | Diesel |
| 67 | 49-82009 | EXH Sensor Plugs Dodge: DPF | Diesel |
| 68 | 49-83022 | EXH Sensor Plugs Ford: DPF | Diesel |
| 69 | 49-84017 | EXH Sensor Plugs GM: DPF | Diesel |
| 70 | 49D42048-P | EXH 5in TB; Dodge Dsl Trucks 13-15 L6-6.7L Pol Tip, LS Susp | Diesel |
| 71 | 49X06128 | EXH 5in DP-Back Nissan Titan XD 16-17 V8-5.0L (td) | Diesel |
| 72 | 49X06128NM | EXH 5in DP-Back Nissan Titan XD 16-17 V8-5.0L (td) | Diesel |
| 73 | 49X23012NM | EXH 4 in DP-Back Ford Dsl Cab Chassis 11-17 6.7L | Diesel |
| 74 | 49X46128 | EXH 5in DP-Back Nissan Titan XD 16-17 V8-5.0L (td) | Diesel |
| 75 | 49X46128-B | EXH 5in DP-Back Nissan Titan XD 16-17 V8-5.0L (td) | Diesel |
| 76 | 49X46128-P | EXH 5in DP-Back Nissan Titan XD 16-17 V8-5.0L (td) | Diesel |
| 77 | 49X52019NM | EXH 4 in TB RAM Dsl Cab Chassis 07-10 L6-6.7L | Diesel |
| 78 | 49X53012NM | EXH 4 in DP-Back Ford Dsl Cab Chassis 11-17 6.7L | Diesel |
| 79 | 49-02007 | EXH 5 in TB Dodge Dsl Trucks 04.5-07 L6-5.9L | Diesel |
| 80 | 49-02007NM | EXH 5 in TB Dodge Dsl Trucks 04.5-07 L6-5.9L | Diesel |
| 81 | 49-02009 | EXH 4 in DP Dodge Dsl Trucks 07.5-12 L6-6.7L | Diesel |
| 82 | 49-02010 | EXH 4 in RP Dodge Dsl Trucks 07.5-12 L6-6.7L | Diesel |
| 83 | 49-02011 | EXH 4 in DP Dodge Dsl Trucks 07.5-12 L6-6.7L | Diesel |
| 84 | 49-02054 | EXH 4 in TB RAM Dsl Trucks 13-17 L6-6.7L | Diesel |
| 85 | 49-02054NM | EXH 4 in TB RAM Dsl Trucks 13-17 L6-6.7L | Diesel |
| 86 | 49-02058 | EXH 4 in TB Dodge Dsl Trucks 04.5-12 L6-5.9/6.7L | Diesel |
| 87 | 49-02058NM | EXH 4 in TB Dodge Dsl Trucks 04.5-12 L6-5.9/6.7L | Diesel |

# Appendix A

| ROW | Part No. | Description | Fuel |
|---|---|---|---|
| 88 | 49-03039 | EXH 5 in DP-Back Ford Dsl Trucks 11-16 V8-6.7L | Diesel |
| 89 | 49-03039NM | EXH 5 in DP-Back Ford Dsl Trucks 11-16 V8-6.7L | Diesel |
| 90 | 49-03098 | EXH 4 in DP-Back Ford Dsl Trucks 17-19 V8-6.7L | Diesel |
| 91 | 49-03098NM | EXH 4 in DP-Back Ford Dsl Trucks 17-19 V8-6.7L | Diesel |
| 92 | 49-03099 | EXH 4 in RP Ford Dsl Trucks 17-19 V8-6.7L | Diesel |
| 93 | 49-03099NM | EXH 4 in RP Ford Dsl Trucks 17-19 V8-6.7L | Diesel |
| 94 | 49-04010 | EXH 4 in RP GM Dsl Trucks 07.5-10 V8-6.6L | Diesel |
| 95 | 49-04011 | EXH 4 in RP GM Dsl Trucks 07.5-10 V8-6.6L | Diesel |
| 96 | 49-04012 | EXH 4 in RP GM Dsl Trucks 07.5-10 V8-6.6L | Diesel |
| 97 | 49-04013 | EXH 4 in RP GM Dsl Trucks 07.5-10 V8-6.6L ECLB | Diesel |
| 98 | 49-04014 | EXH 4 in RP GM Dsl Trucks 07.5-10 V8-6.6L | Diesel |
| 99 | 49-04015 | EXH 4 in RP GM Dsl Trucks 07.5-10 V8-6.6L | Diesel |
| 100 | 49-04035-1 | EXH 5 in DP-Bk GM Dsl Trk 11-15 V8-6.6L | Diesel |
| 101 | 49-04035NM | EXH 5in DP-Bk GM Dsl Trk 11-15 V8-6.6L | Diesel |
| 102 | 49-04054 | EXH 5 in DP-Back GM Dsl Trk 15.5-16 V8-6.6L | Diesel |
| 103 | 49-04054NM | EXH 5 in DP-Back GM Dsl Trk 15.5-16 V8-6.6L | Diesel |
| 104 | 49-04087 | EXH 5 in DP-Back GM Dsl Trk 17-19 V8-6.6L | Diesel |
| 105 | 49-04087NM | EXH 5 in DP-Back GM Dsl Trk 17-19 V8-6.6L | Diesel |
| 106 | 49-12009-1 | EXH 4 in TB Dodge Dsl Trucks 07.5-12 L6-6.7L | Diesel |
| 107 | 49-13004 | EXH 4 in TB Ford Dsl Trucks 03-07 V8-6.0L | Diesel |
| 108 | 49-42007 | EXH 5 in TB Dodge Dsl Trucks 04.5-07 L6-5.9L | Diesel |
| 109 | 49-42009-1 | EXH 4 in TB Dodge Dsl Trucks 07.5-12 L6-6.7L | Diesel |
| 110 | 49-42054-B | EXH 4 in TB RAM Dsl Trucks 13-17 L6-6.7L blk tip | Diesel |
| 111 | 49-42054-P | EXH 4 in TB RAM Dsl Trucks 13-17 L6-6.7L pol tip | Diesel |
| 112 | 49-43004 | EXH 4 in TB Ford Dsl Trucks 03-07 V8-6.0L | Diesel |
| 113 | 49-43024 | EXH 4 in RP Ford Dsl Trucks 08-10 V8-6.4L | Diesel |
| 114 | 49-43025 | EXH 4 in DP Ford Dsl Trucks 08-10 V8-6.4L | Diesel |
| 115 | 49-43026 | EXH 3.5 in RP Ford Dsl Trucks 08-10 V8-6.4L | Diesel |
| 116 | 49-43027 | EXH 4 in RP Ford Dsl Trucks 08-10 V8-6.4L | Diesel |
| 117 | 49-43031 | EXH 4 in RP Ford Dsl Trucks 08-10 V8-6.4L | Diesel |
| 118 | 49-43039 | EXH 5 in DP-Back Ford Dsl Trucks 11-16 V8-6.7L | Diesel |
| 119 | 49-43039NM | EXH 5 in DP-Back Ford Dsl Trucks 11-16 V8-6.7L | Diesel |
| 120 | 49-43098 | EXH 4 in DP-Back Ford Dsl Trucks 17-19 V8-6.7L | Diesel |
| 121 | 49-43098-B | EXH 4 in DP-Back Ford Dsl Trucks 17-19 V8-6.7L | Diesel |
| 122 | 49-43098-P | EXH 4 in DP-Back Ford Dsl Trucks 17-19 V8-6.7L | Diesel |
| 123 | 49-43099 | EXH 4 in RP Ford Dsl Trucks 17-19 V8-6.7L | Diesel |
| 124 | 49-43099NM | EXH 4 in RP Ford Dsl Trucks 17-19 V8-6.7L | Diesel |
| 125 | 49-44019 | EXH 4 in RP GM Dsl Trucks 07.5-10 V8-6.6L | Diesel |
| 126 | 49-44020 | EXH 4 in RP GM Dsl Trucks 07.5-10 V8-6.6L | Diesel |
| 127 | 49-44021 | EXH 4 in RP GM Dsl Trucks 07.5-10 V8-6.6L | Diesel |
| 128 | 49-44022 | EXH 4 in RP GM Dsl Trucks 07.5-10 V8-6.6L | Diesel |
| 129 | 49-44023 | EXH 4 in RP GM Dsl Trucks 07.5-10 V8-6.6L | Diesel |
| 130 | 49-44024 | EXH 4 in RP GM Dsl Trucks 07.5-10 V8-6.6L | Diesel |

# Appendix A

| ROW | Part No. | Description | Fuel |
|-----|----------|-------------|------|
| 131 | 49-44027 | EXH 4 in RP GM Dsl Trucks 11-16 V8-6.6L mid-pipe | Diesel |
| 132 | 49-44032 | EXH 4in DP-Bk GM Dsl Trucks 11-15 6.6L w/mflr | Diesel |
| 133 | 49-44035-B | EXH 5 in DP-Back GM Dsl Trk 11-15 V8-6.6L blk tip | Diesel |
| 134 | 49-44035NM | EXH 5in DP-Bk GM Dsl Trk 11-15 6.6L wo mflr no tip | Diesel |
| 135 | 49-44035-P | EXH 5 in DP-Back GM Dsl Trk 11-15 V8-6.6L pol tip | Diesel |
| 136 | 49-44054-B | EXH 5 in DP-Back GM Dsl Trk 15.5-16 6.6L blk tip | Diesel |
| 137 | 49-44054-P | EXH 5 in DP-Back GM Dsl Trk 15.5-16 6.6L pol tip | Diesel |
| 138 | 49-44073-B | EXH 3 in DP-Back GM Colorado/Canyon 16-19 2.8L | Diesel |
| 139 | 49-44073NM | EXH 3 in DP-Back GM Colorado/Canyon 16-19 2.8L | Diesel |
| 140 | 49-44073-P | EXH 3 in DP-Back Colorado/Canyon 16-19 2.8L | Diesel |
| 141 | 49-44087 | EXH 5 in DP-Back GM Dsl Trk 17-19 V8-6.6L | Diesel |
| 142 | 49-44087-B | EXH 5 in DP-Back GM Dsl Trk 17-19 V8-6.6L | Diesel |
| 143 | 49-44087-P | EXH 5 in DP-Back GM Dsl Trk 17-19 V8-6.6L | Diesel |
| 144 | 49-02050 | EXH 4 in RP RAM Dsl Trucks 13-17 L6-6.7L | Diesel |
| 145 | 49-02055 | EXH 4 in RP RAM Dsl Trucks 13-17 L6-6.7L | Diesel |
| 146 | 49-03040 | EXH 5in DP-Back; Ford Dsl Trucks 08-10 V8-6.4L No Mflr No Tip | Diesel |
| 147 | 49-03040-1 | EXH 5 in DP-Bk Ford Dsl Trk 08-10 6.4L | Diesel |
| 148 | 49-03040NM | EXH 5 in DP-Bk Ford Dsl Trk 08-10 6.4L | Diesel |
| 149 | 49-03077 | EXH 5 in TB Ford Dsl Trucks 03-07 V8-6.0L | Diesel |
| 150 | 49-03077NM | EXH 5 in TB Ford Dsl Trucks 03-07 V8-6.0L | Diesel |
| 151 | 49-04021 | EXH 4 in RP GM Dsl Trucks 11-15 V8-6.6L | Diesel |
| 152 | 49-04033NM | EXH 5 in DP-Back GM Dsl Trucks 07.5-10 V8-6.6L | Diesel |
| 153 | 49-04044-B | EXH 4in DP-Bk GM Dsl Trk 11-15 V8-6.6L blk-dual | Diesel |
| 154 | 49-04044-P | EXH 4in DP-Bk GM Dsl Trk 11-15 V8-6.6L pol-dual | Diesel |
| 155 | 49-04052 | EXH 4in DP-Bk GM Dsl Truck 15.5-16 6.6L dual | Diesel |
| 156 | 49-04055 | EXH 4 in RP GM Dsl Trucks 15.5-16 V8-6.6L | Diesel |
| 157 | 49-04066 | EXH 4 in RP GM Dsl Trucks 11-15 V8-6.6L | Diesel |
| 158 | 49-04067 | EXH 4 in RP GM Dsl Trucks 15.5-16 V8-6.6L | Diesel |
| 159 | 49-04090 | EXH 4 in DP-Back GM Dsl Trk 17-19 V8-6.6L | Diesel |
| 160 | 49-04090NM | EXH 4 in DP-Back GM Dsl Trk 17-19 V8-6.6L | Diesel |
| 161 | 49-06129 | EXH 4 in RP Nissan Titan XD 16-19 V8-5.0L (td) | Diesel |
| 162 | 49-06129NM | EXH 4 in RP Nissan Titan XD 16-19 V8-5.0L (td) | Diesel |
| 163 | 49-12004 | EXH 4 in TB Dodge Dsl Trucks 04.5-07 L6-5.9L | Diesel |
| 164 | 49-13022 | EXH 4in DP-BkFord Dsl Truck 08-10 V8-6.4L w/bungs | Diesel |
| 165 | 49-42004 | EXH 4 in TB Dodge Dsl Trucks 04.5-07 L6-5.9L | Diesel |
| 166 | 49-42020 | EXH 4 in RP Dodge Dsl Trucks 07.5-12 L6-6.7L | Diesel |
| 167 | 49-42021 | EXH 4 in DP Dodge Dsl Trucks 07.5-12 L6-6.7L | Diesel |
| 168 | 49-42022 | EXH 4 in RP Dodge Dsl Trucks 07.5-12 L6-6.7L | Diesel |
| 169 | 49-42023 | EXH 4 in DP Dodge Dsl Trucks 07.5-12 L6-6.7L | Diesel |
| 170 | 49-42029 | EXH 4 in RP Dodge Dsl Trucks 11-12 L6-6.7L | Diesel |
| 171 | 49-42050 | EXH 4 in RP RAM Dsl Trucks 13-17 L6-6.7L | Diesel |
| 172 | 49-42055 | EXH 4 in RP RAM Dsl Trucks 13-17 L6-6.7L | Diesel |
| 173 | 49-43022 | EXH 4in DP-Bk Ford Dsl Truck 08-10 V8-6.4L w mflr | Diesel |

# Appendix A

| ROW | Part No. | Description | Fuel |
|---|---|---|---|
| 174 | 49-43035NM | EXH 4in DP-Bk Ford Dsl Truck 11-16 V8-6.7L wo mflr | Diesel |
| 175 | 49-43036 | EXH 4 in RP Ford Dsl Trucks 11-16 V8-6.7L | Diesel |
| 176 | 49-43040 | EXH 5 in DP-Back Ford Dsl Trucks 08-10 V8-6.4L | Diesel |
| 177 | 49-43040-B | EXH 5 in DP-Back Ford Dsl Trucks 08-10 V8-6.4L | Diesel |
| 178 | 49-43040-P | EXH 5 in DP-Back Ford Dsl Trucks 08-10 V8-6.4L | Diesel |
| 179 | 49-43077-B | EXH 5 in TB Ford Dsl Trucks 03-07 V8-6.0L | Diesel |
| 180 | 49-43077-P | EXH 5 in TB Ford Dsl Trucks 03-07 V8-6.0L | Diesel |
| 181 | 49-43096-B | EXH 4 in DP-Back Ford Dsl Trucks 17-18 V8-6.7L | Diesel |
| 182 | 49-43096-P | EXH 4 in DP-Back Ford Dsl Trucks 17-18 V8-6.7L | Diesel |
| 183 | 49-43097-B | EXH 4 in DP-Back Ford Dsl Trucks 17-19 6.7L dual | Diesel |
| 184 | 49-43097-P | EXH 4 in DP-Back Ford Dsl Trucks 17-19 6.7L dual | Diesel |
| 185 | 49-44025 | EXH 4 in CB GM Dsl Trucks 11-16 V8-6.6L | Diesel |
| 186 | 49-44026NM | EXH 4in CB GM Dsl Truck 11-16 6.6L wo mflr no tip | Diesel |
| 187 | 49-44028 | EXH 4 in RP GM Dsl Trucks 11-15 V8-6.6L frnt-pipe | Diesel |
| 188 | 49-44030NM | EXH 5in CB GM Dsl Trucks 11-16 6.6L wo mflr no tip | Diesel |
| 189 | 49-44033-B | EXH 5 in DP-Bk GM Dsl Trk 07.5-10 V8-6.6L blk tip | Diesel |
| 190 | 49-44033NM | EXH 5 in DP-Bk GM Dsl Trk 07.5-10 V8-6.6L no tip | Diesel |
| 191 | 49-44033-P | EXH 5 in DP-Bk GM Dsl Trk 07.5-10 V8-6.6L pol tip | Diesel |
| 192 | 49-44044-B | EXH 4in DP-Bk GM Dsl Trk 11-15 V8-6.6L blk-dual | Diesel |
| 193 | 49-44044-P | EXH 4in DP-Bk GM Dsl Trk 11-15 V8-6.6L pol-dual | Diesel |
| 194 | 49-44052-B | EXH 4in DP-Bk GM Dsl Truck 15.5-16 6.6L blk-dual | Diesel |
| 195 | 49-44052-P | EXH 4in DP-Bk GM Dsl Truck 15.5-16 6.6L pol-dual | Diesel |
| 196 | 49-44055 | EXH 4 in RP GM Dsl Trucks 15.5-16 V8-6.6L | Diesel |
| 197 | 49-44066 | EXH 4 in RP GM Dsl Trucks 11-15 V8-6.6L | Diesel |
| 198 | 49-44067 | EXH 4 in RP GM Dsl Trucks 15.5-16 V8-6.6L | Diesel |
| 199 | 49-44074-B | EXH 3 in DP-Back GM Colorado/Canyon 16-19 2.8L | Diesel |
| 200 | 49-44074-P | EXH 3 in DP-Back GM Colorado/Canyon 16-19 2.8L | Diesel |
| 201 | 49-44077 | EXH 2.5 in DP GM Colorado/Canyon 16-19 2.8L (td) | Diesel |
| 202 | 49-44090 | EXH 4 in DP-Back GM Dsl Trk 17-19 V8-6.6L | Diesel |
| 203 | 49-44090-B | EXH 4 in DP-Back GM Dsl Trk 17-19 V8-6.6L | Diesel |
| 204 | 49-44090-P | EXH 4 in DP-Back GM Dsl Trk 17-19 V8-6.6L | Diesel |
| 205 | 49-46129 | EXH 4 in RP Nissan Titan XD 16-19 V8-5.0L (td) | Diesel |
| 206 | 49-46129NM | EXH 4 in RP Nissan Titan XD 16-19 V8-5.0L (td) | Diesel |
| 207 | 48-34008 | HDR UP/DP GM Dsl Trucks 04.5-10 V8-6.6L (td) | Diesel |
| 208 | 49-03066-P | EXH 4in DP-Bk Ford Dsl Trk 11-16 V8-6.7L pol tips | Diesel |
| 209 | 49-04079 | EXH 4 in RP GM Dsl Trucks 07.5-10 6.6L CCSB/ECSB | Diesel |
| 210 | 49-04083 | EXH 4 in RP GM Dsl Trucks 07.5-10 6.6L CCLB/ECLB | Diesel |
| 211 | 49-06127NM | EXH 4in DP-Back Nissan Titan XD 16-19 V8-5.0L (td) | Diesel |
| 212 | 49-13029 | EXH 4in DP-BkFord Dsl Truck 08-10 V8-6.4Lno bungs | Diesel |
| 213 | 49-22001NM | EXH 4in TB RAM Dsl Trucks 13-18 L6-6.7L | Diesel |
| 214 | 49-22002NM | EXH 4in TB Dodge/RAM Dsl Trucks 04.5-12 L6-5.9/6.7L | Diesel |
| 215 | 49-22005RP | EXH 4in DP RAM Dsl Trucks 13-18 L6-6.7L | Diesel |
| 216 | 49-22006RP | EXH 4in RP RAM Dsl Trucks 13-18 L6-6.7L | Diesel |

# Appendix A

| ROW | Part No. | Description | Fuel |
|---|---|---|---|
| 217 | 49-22007RP | EXH 4in DP Dodge/RAM Dsl Trucks 07.5-12 L6-6.7L | Diesel |
| 218 | 49-22008RP | EXH 4in RP Dodge/RAM Dsl Trucks 07.5-12 L6-6.7L | Diesel |
| 219 | 49-22011RP | EXH 4 in RP RAM Dsl Cab Chassis 13-18 L6-6.7L | Diesel |
| 220 | 49-22012RP | EXH 4 in RP RAM Dsl Cab Chassis 13-18 L6-6.7L | Diesel |
| 221 | 49-22015RP | EXH 4 in RP RAM Dsl Cab Chassis 13-18 L6-6.7L | Diesel |
| 222 | 49-22017NM | EXH 5 in TB RAM Dsl Cab Chassis 11-18 L6-6.7L | Diesel |
| 223 | 49-23001NM | EXH 4in TB Ford Dsl Trucks 17-19 V8-6.7L | Diesel |
| 224 | 49-23002NM | EXH 4in TB Ford Dsl Trucks 11-16 V8-6.7L | Diesel |
| 225 | 49-23003NM | EXH 4in TB Ford Dsl Trucks 08-10 V8-6.4L | Diesel |
| 226 | 49-23004NM | EXH 4in TB Ford Dsl Trucks 03-07 V8-6.0L | Diesel |
| 227 | 49-23006RP | EXH 4in RP Ford Dsl Trucks 17-19 V8-6.7L | Diesel |
| 228 | 49-23007RP | EXH 4in RP Ford Dsl Trucks 11-16 V8-6.7L | Diesel |
| 229 | 49-23008RP | EXH 4in RP Ford Dsl Trucks 08-10 V8-6.4L | Diesel |
| 230 | 49-24001NM | EXH 4in TB GM Dsl Trucks 17-19 V8-6.6L | Diesel |
| 231 | 49-24002NM | EXH 4in TB GM Dsl Trucks 15.5-16 V8-6.6L | Diesel |
| 232 | 49-24003NM | EXH 4in TB GM Dsl Trucks 11-15 V8-6.6L | Diesel |
| 233 | 49-24005RP | EXH 4in RP GM Dsl Trucks 17-19 V8-6.6L | Diesel |
| 234 | 49-24006RP | EXH 4in RP GM Dsl Trucks 15.5-16 V8-6.6L | Diesel |
| 235 | 49-24007RP | EXH 4in RP GM Dsl Trucks 11-15 V8-6.6L | Diesel |
| 236 | 49-24008RP | EXH 4in RP GM Dsl Trucks 07.5-10 V8-6.6L (Short Bed) | Diesel |
| 237 | 49-24009RP | EXH 4in RP GM Dsl Trucks 07.5-10 V8-6.6L (Long Bed) | Diesel |
| 238 | 49-26101NM | EXH 4 in DP-Back Nissan Titan XD 16-19 V8-5.0L td | Diesel |
| 239 | 49-26102RP | EXH 4 in RP Nissan Titan XD 16-19 V8-5.0L (td) | Diesel |
| 240 | 49-42010NM-1 | EXH 4 in TB Dodge Dsl Trucks 07.5-12 L6-6.7L | Diesel |
| 241 | 49-43010 | EXH 4 in TB Ford Excursion 03-05 V8-6.0L | Diesel |
| 242 | 49-43016 | EXH 4 in TB Ford Dsl Trucks 03-07 V8-6.0L dual | Diesel |
| 243 | 49-43023NM | EXH 4in DP-Bk Ford Dsl Truck 08-10 V8-6.4L wo mflr | Diesel |
| 244 | 49-43029 | EXH 4in DP-BkFord Dsl Truck 08-10 V8-6.4L w mflr | Diesel |
| 245 | 49-43030NM | EXH 4in DP-Bk Ford Dsl Truck 08-10 V8-6.4L wo mflr | Diesel |
| 246 | 49-43032 | EXH 4 in RP Ford Dsl Trucks 08-10 V8-6.4L | Diesel |
| 247 | 49-43034 | EXH 4in DP-Bk Ford Dsl Truck 11-16 V8-6.7L w mflr | Diesel |
| 248 | 49-43066-B | EXH 4in DP-Bk Ford Dsl Trk 11-16 V8-6.7L blk tips | Diesel |
| 249 | 49-43066-P | EXH 4in DP-Bk Ford Dsl Trk 11-16 V8-6.7L pol tips | Diesel |
| 250 | 49-44029-B | EXH 5in CB GM Dsl Trucks 11-16 6.6L w/mflr blk tip | Diesel |
| 251 | 49-44029-P | EXH 5in CB GM Dsl Trucks 11-16 6.6L w/mflr pol tip | Diesel |
| 252 | 49-44031NM | EXH 4in DP-Bk GM Dsl Trk 11-15 6.6L wo mflr no tip | Diesel |
| 253 | 49-44076-B | EXH 3 in TB GM Colorado/Canyon 16-19 I4-2.8L (td) | Diesel |
| 254 | 49-44076-P | EXH 3 in TB GM Colorado/Canyon 16-19 I4-2.8L (td) | Diesel |
| 255 | 49-44079 | EXH 4 in RP GM Dsl Trucks 07.5-10 6.6L CCSB/ECSB | Diesel |
| 256 | 49-44083 | EXH 4 in RP GM Dsl Trucks 07.5-10 6.6L CCLB/ECLB | Diesel |
| 257 | 49-44091-B | EXH 4 in DP-Back GM Dsl Trk 17-19 V8-6.6L blk-dual | Diesel |
| 258 | 49-44091-P | EXH 4 in DP-Back GM Dsl Trk 17-19 V8-6.6L pol-dual | Diesel |
| 259 | 49-44092-B | EXH 4 in DP-Back GM Dsl Trk 17-19 V8-6.6L | Diesel |

# Appendix A

| ROW | Part No. | Description | Fuel |
|---|---|---|---|
| 260 | 49-44092-P | EXH 4 in DP-Back GM Dsl Trk 17-19 V8-6.6L | Diesel |
| 261 | 49-46127 | EXH 4in DP-Back Nissan Titan XD 16-19 V8-5.0L (td) | Diesel |
| 262 | 49-46127-B | EXH 4in DP-Back Nissan Titan XD 16-19 V8-5.0L (td) | Diesel |
| 263 | 49-46127-P | EXH 4in DP-Back Nissan Titan XD 16-19 V8-5.0L (td) | Diesel |
| 264 | 49-52011RP | EXH 4 in RP RAM Dsl Cab Chassis 13-18 L6-6.7L | Diesel |
| 265 | 49-52016RP | EXH 4 in RP w/ Muffler RAM Dsl Cab Chassis 13-18 L6-6.7L | Diesel |
| 266 | 49-52017NM | EXH 5 in TB RAM Dsl Trucks 11-18 L6-6.7L | Diesel |
| 267 | 46-60076 | T/C Adapter, High Flow Ford Dsl Tks 99.5-03 7.3L | Diesel |
| 268 | 48-34133 | HDR & Up-Pipes GM Diesel Trucks 11-15 V8-6.6L | Diesel |
| 269 | 49-06127 | EXH 4in DP-Back Nissan Titan XD 16-19 V8-5.0L (td) | Diesel |
| 270 | 49-02001 | EXH 4 in TB Dodge Dsl Trucks 94-02 L6-5.9L | Diesel |
| 271 | 49-02001NM | EXH 4 in TB Dodge Dsl Trucks 94-02 L6-5.9L | Diesel |
| 272 | 49-02002 | EXH 4 in TB Dodge Dsl Trucks 03-04 L6-5.9L | Diesel |
| 273 | 49-02002NM | EXH 4 in TB Dodge Dsl Trucks 03-04 L6-5.9L | Diesel |
| 274 | 49-02032 | EXH 5 in TB Dodge Dsl Trucks 03-04.5 L6-5.9L | Diesel |
| 275 | 49-02032NM | EXH 5 in TB Dodge Dsl Trucks 03-04.5 L6-5.9L | Diesel |
| 276 | 49-02033 | EXH 5 in TB Dodge Dsl Trucks 94-02 L6-5.9L | Diesel |
| 277 | 49-02033NM | EXH 5 in TB Dodge Dsl Trucks 94-02 L6-5.9L | Diesel |
| 278 | 49-03001 | EXH 4 in TB Ford Dsl Trucks 94-97 V8-7.3L | Diesel |
| 279 | 49-03001NM | EXH 4 in TB Ford Dsl Trucks 94-97 V8-7.3L | Diesel |
| 280 | 49-03002 | EXH 4 in TB Ford Dsl Trucks 99-03 V8-7.3L | Diesel |
| 281 | 49-03002NM | EXH 4 in TB Ford Dsl Trucks 99-03 V8-7.3L | Diesel |
| 282 | 49-03075 | EXH 5 in TB Ford Dsl Trucks 99-03 V8-7.3L | Diesel |
| 283 | 49-03075NM | EXH 5 in TB Ford Dsl Trucks 99-03 V8-7.3L | Diesel |
| 284 | 49-03100 | EXH 4 in DP Ford Dsl Trucks 99-03 V8-7.3L | Diesel |
| 285 | 49-04001 | EXH 4 in DP-Back GM Dsl Trucks 01-07 V8-6.6L | Diesel |
| 286 | 49-04001NM | EXH 4 in DP-Back GM Dsl Trucks 01-07 V8-6.6L | Diesel |
| 287 | 49-04007NM | EXH 5 in DP-Back GM Dsl Trucks 01-07 V8-6.6L | Diesel |
| 288 | 49-04045-B | EXH 4in DP-Bk GM Dsl Trk 01-07 V8-6.6 blk-dual | Diesel |
| 289 | 49-04045-P | EXH 4in DP-Bk GM Dsl Trk 01-07 V8-6.6 pol-dual | Diesel |
| 290 | 49-04059 | EXH 4 in DP-Back GM Dsl Trk 01-10 V8-6.6L no tip | Diesel |
| 291 | 49-04059NM | EXH 4 in DP-Back GM Dsl Trk 01-10 V8-6.6L | Diesel |
| 292 | 49-04060 | EXH 5 in DP-Back GM Dsl Trk 01-10 V8-6.6L | Diesel |
| 293 | 49-04060NM | EXH 5 in DP-Back GM Dsl Trk 01-10 V8-6.6L | Diesel |
| 294 | 49-12001 | EXH 4 in TB Dodge Dsl Trucks 94-02 L6-5.9L | Diesel |
| 295 | 49-12003 | EXH 4 in TB Dodge Dsl Trucks 03-04 L6-5.9L | Diesel |
| 296 | 49-13001 | EXH 4 in TB Ford Dsl Trucks 94-97 V8-7.3L | Diesel |
| 297 | 49-13002 | EXH 4 in TB Ford Dsl Trucks 99-03 V8-7.3L | Diesel |
| 298 | 49-14003 | EXH 4 in DP-Back GM Dsl Trucks 01-07 V8-6.6L | Diesel |
| 299 | 49-14003NM | EXH 4 in DP-Back GM Dsl Trucks 01-07 V8-6.6L | Diesel |
| 300 | 49-22003NM | EXH 4in TB Dodge Dsl Trucks 03-04 L6-5.9L | Diesel |
| 301 | 49-22004NM | EXH 4in TB Dodge Dsl Trucks 94-02 L6-5.9L | Diesel |
| 302 | 49-23005NM | EXH 4in TB Ford Dsl Trucks 99-03 V8-7.3L | Diesel |

# Appendix A

| ROW | Part No. | Description | Fuel |
|---|---|---|---|
| 303 | 49-23011NM | EXH 4 in TB Ford Dsl Trucks 94-97 V8-7.3L | Diesel |
| 304 | 49-24004NM | EXH 4in TB GM Dsl Trucks 01-10 V8-6.6L | Diesel |
| 305 | 49-42001 | EXH 4 in TB Dodge Dsl Trucks 94-02 L6-5.9L | Diesel |
| 306 | 49-42003 | EXH 4 in TB Dodge Dsl Trucks 03-04 L6-5.9L | Diesel |
| 307 | 49-42032-B | EXH 5in TB Dodge Dsl Trucks 03-04 L6-5.9L blk tip | Diesel |
| 308 | 49-42032-P | EXH 5in TB Dodge Dsl Trucks 03-04 L6-5.9L pol tip | Diesel |
| 309 | 49-42033-B | EXH 5in TB Dodge Dsl Trucks 94-02 L6-5.9L blk tip | Diesel |
| 310 | 49-42033NM | EXH 5in TB Dodge Dsl Trucks 94-02 L6-5.9L no tip | Diesel |
| 311 | 49-42033-P | EXH 5in TB Dodge Dsl Trucks 94-02 L6-5.9L pol tip | Diesel |
| 312 | 49-43001 | EXH 4 in TB Ford Dsl Trucks 94-97 V8-7.3L | Diesel |
| 313 | 49-43002 | EXH 4 in TB Ford Dsl Trucks 99-03 V8-7.3L | Diesel |
| 314 | 49-43075-B | EXH 5 in TB Ford Dsl Trucks 99-03 V8-7.3L | Diesel |
| 315 | 49-43075-P | EXH 5 in TB Ford Dsl Trucks 99-03 V8-7.3L | Diesel |
| 316 | 49-44003-B | EXH 4in DP-Bk GM Dsl Trucks 01-07 V8-6.6L blk tip | Diesel |
| 317 | 49-44003-P | EXH 4in DP-Bk GM Dsl Trucks 01-07 V8-6.6L pol tip | Diesel |
| 318 | 49-44007-B | EXH 5in DP-Bk GM Dsl Trucks 01-07 V8-6.6L blk tip | Diesel |
| 319 | 49-44007NM | EXH 5in DP-Bk GM Dsl Trucks 01-07 V8-6.6L no tip | Diesel |
| 320 | 49-44007-P | EXH 5in DP-Bk GM Dsl Trucks 01-07 V8-6.6L pol tip | Diesel |
| 321 | 49-44045-B | EXH 4in DP-Bk GM Dsl Trk 01-07 V8-6.6 blk-dual | Diesel |
| 322 | 49-44045-P | EXH 4in DP-Bk GM Dsl Trk 01-07 V8-6.6 pol-dual | Diesel |
| 323 | 49-44059-B | EXH 4 in DP-Back GM Dsl Trk 01-10 V8-6.6L blk tip | Diesel |
| 324 | 49-44059-P | EXH 4 in DP-Back GM Dsl Trk 01-10 V8-6.6L pol tip | Diesel |
| 325 | 49-44060-B | EXH 5 in DP-Back GM Dsl Trk 01-10 V8-6.6L blk tip | Diesel |
| 326 | 49-44060-P | EXH 5 in DP-Back GM Dsl Trk 01-10 V8-6.6L pol tip | Diesel |
| 327 | 48-02003 | HDR Y-Pipe Dodge RAM Trucks 09-19 V8-5.7L | Gas |
| 328 | 48-02004 | HDR Y-Pipe Dodge RAM Trucks 09-15 V8-5.7L | Gas |
| 329 | 48-03006 | HDR Y-Pipe Ford F-150 11-14 V6-3.5L (tt) | Gas |
| 330 | 48-03007 | HDR Y-Pipe Ford F-150 11-14 V6-3.5L (tt) | Gas |
| 331 | 48-32007-YC | HDR & C-Pipe Dodge Challenger 11-14 6.4L | Gas |
| 332 | 48-32011-YC | HDR & C-Pipe Dodge Charger 09-18 V8-5.7L | Gas |
| 333 | 48-32011-YN | HDR & C-Pipe Dodge Charger 09-16 V8-5.7L | Gas |
| 334 | 48-32012-YC | HDR & C-Pipe Dodge Challenger Hellcat 15-19 6.2L | Gas |
| 335 | 48-32012-YN | Dodge Challenger/Charger SRT Hellcat V8-6.2L (sc) | Gas |
| 336 | 48-32014-YC | HDR & C-Pipe Dodge Challenger Hellcat 15-19 6.2L | Gas |
| 337 | 48-32014-YN | Dodge Challenger/Charger SRT Hellcat V8-6.2L (sc) | Gas |
| 338 | 48-32015-YC | HDR C-Pipe Dodge Challenger Hellcat 15-19 6.2L | Gas |
| 339 | 48-32015-YN | Dodge Hellcat 15-17 SRT-8 V8-6.2L / 392 V8-6.4L | Gas |
| 340 | 48-32022-RC | HDR C-Pipe Dodge Challenger 09-19 V8-5.7L | Gas |
| 341 | 48-32022-RN | HDR C-Pipe Dodge Challenger 09-18 V8-5.7L | Gas |
| 342 | 48-32025-YC | HDR & Y-Pipe RAM 1500 19-20 V8-5.7L | Gas |
| 343 | 48-32025-YN | HDR & Y-Pipe RAM 1500 19-20 V8-5.7L | Gas |
| 344 | 48-32026-YC | HDR C-Pipe Dodge Challenger 11-20 V6-3.6L | Gas |
| 345 | 48-32026-YN | HDR C-Pipe Dodge Challenger 11-20 V6-3.6L | Gas |

# Appendix A

| ROW | Part No. | Description | Fuel |
|---|---|---|---|
| 346 | 48-32027-YC | HDR & Mid Pipe Dodge Charger 15-20 V8-5.7L | Gas |
| 347 | 48-32028-YC | HDR & Mid Pipe Dodge Challenger Hellcat 15-20 6.2L | Gas |
| 348 | 48-33002-YC | HDR & Y-Pipe Ford F-150 Raptor 11-14 6.2L | Gas |
| 349 | 48-33012-YC | HDR & C-Pipe Ford Mustang GT 15-19 V8-5.0L | Gas |
| 350 | 48-33017-HC | HDR DP Ford Mustang 15-19 I4-2.3L (t) | Gas |
| 351 | 48-33017-HN | HDR DP Ford Mustang 15-17 I4-2.3L (t) | Gas |
| 352 | 48-33021-HC | HDR DP Ford F-150 Raptor 17-19 V6-3.5L (tt) | Gas |
| 353 | 48-33021-HN | Ford F-150 Raptor 2017 V6-3.5L (tt) | Gas |
| 354 | 48-33024-HN | HDR DP Ford Focus RS 16-18 L4-2.3L (t) | Gas |
| 355 | 48-33028-HC | HDR DP Ford Ranger 19-20 L4-2.3L (t) | Gas |
| 356 | 48-33028-HN | HDR DP Ford Ranger 19-20 L4-2.3L (t) | Gas |
| 357 | 48-34103-YC | HDR & X-Pipe Corvette C5 97-04 V8-5.7L | Gas |
| 358 | 48-34103-YN | HDR & X-Pipe Corvette C5 97-04 V8-5.7L | Gas |
| 359 | 48-34105-YC | HDR & X-Pipe Corvette C6 05-08 6.0/6.2L | Gas |
| 360 | 48-34105-YN | HDR & X-Pipe Corvette C6 05-08 6.0/6.2L | Gas |
| 361 | 48-34107-YC | HDR & X-Pipe Corvette Z06 C6 06-13 6.2/7.0L | Gas |
| 362 | 48-34107-YN | HDR & X-Pipe Corvette Z06 C6 06-13 6.2/7.0L | Gas |
| 363 | 48-34109-YC | HDR & X-Pipe Corvette C6 09-13 V8-6.2L | Gas |
| 364 | 48-34109-YN | HDR & X-Pipe Corvette C6 09-13 V8-6.2L | Gas |
| 365 | 48-34112-YC | HDR & X-Pipe Corvette C7 14-19 V8-6.2L | Gas |
| 366 | 48-34112-YN | HDR & X-Pipe Corvette C7 14-16 V8-6.2L | Gas |
| 367 | 48-34123-YC | HDR & C-Pipe Chevrolet Camaro 10-15 V8-6.2L | Gas |
| 368 | 48-34123-YN | HDR & C-Pipe Chevrolet Camaro 10-15 V8-6.2L | Gas |
| 369 | 48-34125-YC | HDR & C-Pipe Cadillac CTS-V 09-15 6.2L (sc) | Gas |
| 370 | 48-34125-YN | HDR & C-Pipe Cadillac CTS-V 09-15 6.2L (sc) | Gas |
| 371 | 48-34126-HN | HDR DP Cadillac ATS 13-16 L4-2.0L (t) | Gas |
| 372 | 48-34127-YC | HDR & X-Pipe Chevrolet Camaro 16-19 V8-6.2L | Gas |
| 373 | 48-34127-YN | HDR & X-Pipe Chevrolet Camaro 2016 V8-6.2L | Gas |
| 374 | 48-34128-HC | HDR DP Cadillac ATS-V 16-19 V6-3.0L (tt) | Gas |
| 375 | 48-34128-HN | Cadillac ATS-V 16-17 V6-3.6L (tt) | Gas |
| 376 | 48-34129-YN | Chevrolet Corvette (C7) 14-17 V8-6.2L | Gas |
| 377 | 48-34130-YN | Chevrolet Corvette (C7) 14-17 V8-6.2L | Gas |
| 378 | 48-34132-PK | Chevrolet Corvette (C7) 14-17 V8-6.2L | Gas |
| 379 | 48-34135-RC | HDR Y-Pipe GM Trucks 1500 19-20 V8-5.3L | Gas |
| 380 | 48-34135-RN | HDR Y-Pipe GM Trucks 1500 19-20 V8-5.3L | Gas |
| 381 | 48-34136-RC | HDR Y-Pipe GM Trucks 1500 19-20 V8-6.2L | Gas |
| 382 | 48-34136-RN | HDR Y-Pipe GM Trucks 1500 19-20 V8-6.2L | Gas |
| 383 | 48-34138-YC | HDR DP GM 1500 19-20 L4-2.7L (t) | Gas |
| 384 | 48-34143-YC | HDR & Mid Pipe Chevrolet Camaro 16-20 V8-6.2L | Gas |
| 385 | 48-34146-YC | HDR & Y-Pipe GM Trucks 2500/3500HD 2020 V8-6.6L | Gas |
| 386 | 48-34147-RC | HDR Y-Pipe GM Trucks 2500/3500HD 2020 V8-6.6L | Gas |
| 387 | 48-34149-RC | HDR Power Pipe Chevrolet Corvette (C8) 2020 6.2L | Gas |
| 388 | 48-34149-RCS | HDR Power Pipe Chevrolet Corvette (C8) 2020 6.2L | Gas |

# Appendix A

| ROW | Part No. | Description | Fuel |
|---|---|---|---|
| 389 | 48-36005-HN | HDR Scion FR-S/BRZ 13-16 H4-2.0L | Gas |
| 390 | 48-36009-HC | HDR DP Lexus RC200t 16-17 L4-2.0L (t) | Gas |
| 391 | 48-36009-HN | HDR DP Lexus RC200t 16-17 L4-2.0L (t) | Gas |
| 392 | 48-36104-YC | HDR Y-Pipe Nissan 350Z 03-06 V6-3.5L | Gas |
| 393 | 48-36104-YN | HDR Y-Pipe Nissan 350Z 03-06 V6-3.5L | Gas |
| 394 | 48-36106-YC | HDR & C-Pipe Nissan Patrol (Y62) 10-19 5.6L | Gas |
| 395 | 48-36106-YN | HDR & C-Pipe Nissan Patrol (Y62) 10-19 5.6L | Gas |
| 396 | 48-36110-HC | HDR DP Infiniti Q50/Q60 16-19 V6-3.0L (tt) | Gas |
| 397 | 48-36110-HN | HDR DP Infiniti Q50/Q60 16-18 V6-3.0L (tt) | Gas |
| 398 | 48-36111-RN | HDR DP Infiniti Q50/Q60 16-18 V6-3.0L (tt) | Gas |
| 399 | 48-36112-RC | HDR C-Pipe Nissan 350Z 03-06 V6-3.5L | Gas |
| 400 | 48-36113-RC | HDR C-Pipe Nissan 350/370Z 07-20 V6-3.5/3.7L | Gas |
| 401 | 48-36211-YC | HDR & C-Pipe Jeep Grand Cherokee 12-19 6.4L | Gas |
| 402 | 48-36301-1 | HDR DP BMW 335i 07-10 L6-3.0L (tt) N54 | Gas |
| 403 | 48-36302-HC | HDR DP BMW 335i (E9X) 11-13 L6-3.0L (t) N55 | Gas |
| 404 | 48-36302-HN | HDR DP BMW 335i (E9X) 11-13 L6-3.0L (t) N55 | Gas |
| 405 | 48-36303-HC | HDR DP BMW 328/428i (F30/32) 12-16 2.0L (t) | Gas |
| 406 | 48-36306 | HDR BMW M3 (E46) 01-06 L6-3.2L S54 | Gas |
| 407 | 48-36310 | HDR DP BMW 335i (F30) 12-13 3.0L (t) N55 | Gas |
| 408 | 48-36311 | HDR DP BMW 335i (F30) 12-13 3.0L (t) N55 | Gas |
| 409 | 48-36313 | HDR DP BMW M3/M4 15-18 L6-3.0L (tt) | Gas |
| 410 | 48-36315-HC | HDR DP BMW M2 16-19 L6-3.0L (t) N55 | Gas |
| 411 | 48-36315-HN | BMW M2 (F87) 16-17 L6-3.0L (t) N55 | Gas |
| 412 | 48-36316-YN | BMW M3 96-99 (E36) L6-3.2L | Gas |
| 413 | 48-36317-HC | HDR DP BMW 340i (F3x) 16-18 L6-3.0L (t) B58 | Gas |
| 414 | 48-36317-HN | BMW 340i/440i (F3X) 16-17 L6-3.0L (t) B58 | Gas |
| 415 | 48-36318-HN | MINI Cooper S (R56) 07-13 L4-1.6L(t) N18 | Gas |
| 416 | 48-36319-RN | MINI Cooper S (R56) 07-13 L4-1.6L(t) N18 | Gas |
| 417 | 48-36320-RN | HDR RP BMW Z4 M (E85/86) 06-08 L6-3.2L | Gas |
| 418 | 48-36321-HC | HDR DP BMW X6 M (F86) 15-18 V8-4.4L (tt) | Gas |
| 419 | 48-36321-HN | HDR DP BMW X6 M (F86) 15-18 V8-4.4L (tt) | Gas |
| 420 | 48-36322-HN | HDR DP MINI Cooper S 15-20 L4-2.0L (t) | Gas |
| 421 | 48-36323-RN | HDR RP Mini Cooper S 14-19 L4-2.0L (t) | Gas |
| 422 | 48-36403 | HDR Porsche C2S 991 12-15 H6-3.8L | Gas |
| 423 | 48-36404 | HDR Porsche Cayman S (981) 13-16 H6-3.4L | Gas |
| 424 | 48-36405 | HDR Porsche Cayman S (981) 13-15 H6-3.4L | Gas |
| 425 | 48-36407-YC | HDR DP Audi A4 (B9) 17-20 L4-2.0L (t) | Gas |
| 426 | 48-36407-YN | HDR DP Audi A4 (B9) 17-20 L4-2.0L (t) | Gas |
| 427 | 48-36408-YC | HDR DP VW GTI (MKVII) 15-20 L4-2.0L (t) | Gas |
| 428 | 48-36411-YC | HDR DP VW Golf R (MKVII) 15-19 L4-2.0L (t) | Gas |
| 429 | 48-36602-HC | HDR DP Honda Civic Si 12-15 L4-2.4L | Gas |
| 430 | 48-36602-HN | HDR DP Honda Civic Si 12-15 L4-2.4L | Gas |
| 431 | 48-36603-HC | HDR Honda Civic Si 06-11 L4-2.0L | Gas |

# Appendix A

| ROW | Part No. | Description | Fuel |
|---|---|---|---|
| 432 | 48-36603-HN | HDR Honda Civic Si 06-11 L4-2.0L | Gas |
| 433 | 48-36604-HC | HDR DP Honda Civic 16-19 I4-1.5L (t) | Gas |
| 434 | 48-36604-HN | Honda Civic 16-17 I4-1.5L (t) | Gas |
| 435 | 48-36606-HC | HDR DP Honda Civic Type R 17-19 L4-2.0L (t) | Gas |
| 436 | 48-36606-HN | Honda Civic Type R 2017 L4-2.0L (t) | Gas |
| 437 | 48-36801-HC | HDR DP Subaru WRX STI 15-19 H4-2.5L (t) | Gas |
| 438 | 48-36801-HN | HDR DP Subaru WRX STI 15-19 H4-2.5L (t) | Gas |
| 439 | 48-37001-HC | HDR DP Hyundai Elantra GT Sport 2018 1.6L t | Gas |
| 440 | 48-37001-HN | HDR DP Hyundai Elantra GT Sport 2018 1.6L t | Gas |
| 441 | 48-37002-RN | HDR RP Hyundai Elantra GT Sport 2018 1.6L (t) | Gas |
| 442 | 48-37003-HN | HDR Mazda MX-5 Miata (ND) 16-19 L4-2.0L | Gas |
| 443 | 48-37004-RN | HDR RP Mazda MX-5 Miata (ND) 16-19 L4-2.0L | Gas |
| 444 | 48-37005-HC | HDR DP Hyundai Veloster N 19-20 L4-2.0L (t) | Gas |
| 445 | 48-38028-YC | HDR DP Jeep Wrangler (JL) 18-20 L4-2.0L (t) | Gas |
| 446 | 48-38028-YN | HDR DP Jeep Wrangler (JL) 18-20 L4-2.0L (t) | Gas |
| 447 | 48-42002-YC | HDR & C-Pipe Dodge Challenger 11-14 6.4L | Gas |
| 448 | 48-42002-YN | HDR & C-Pipe Dodge Challenger 11-14 6.4L | Gas |
| 449 | 48-42003 | HDR Y-Pipe Dodge RAM Trucks 09-19 V8-5.7L | Gas |
| 450 | 48-42004 | HDR Y-Pipe Dodge RAM Trucks 09-15 V8-5.7L | Gas |
| 451 | 48-42005 | HDR C-Pipe Dodge Challenger 11-14 V8-6.4L | Gas |
| 452 | 48-42006 | HDR C-Pipe Dodge Challenger 11-14 V8-6.4L | Gas |
| 453 | 48-42010-YC | HDR & Y-Pipe Dodge RAM 09-19 V8-5.7L 2/4WD | Gas |
| 454 | 48-42013-YC | HDR & C-Pipe RAM 2500/3500 14-18 V8-6.4L | Gas |
| 455 | 48-42013-YN | RAM 2500/3500 14-17 V8-6.4L HEMI, Incl Power Wagon | Gas |
| 456 | 48-42024-RC | HDR Y-Pipe RAM 1500 2019 V8-5.7L HEMI | Gas |
| 457 | 48-42024-RN | HDR Y-Pipe RAM 1500 2019 V8-5.7L HEMI | Gas |
| 458 | 48-43003-YC | HDR & Y-Pipe Ford F-150 04-08 V8-5.4L | Gas |
| 459 | 48-43003-YN | HDR & Y-Pipe Ford F-150 04-08 V8-5.4L | Gas |
| 460 | 48-43004 | HDR Y-Pipe Ford F-150 11-14 V8-5.0L | Gas |
| 461 | 48-43005 | HDR Y-Pipe Ford F-150 11-14 V8-5.0L | Gas |
| 462 | 48-43006 | HDR Y-Pipe Ford F-150 11-14 V6-3.5L (tt) | Gas |
| 463 | 48-43007 | HDR Y-Pipe Ford F-150 11-14 V6-3.5L (tt) | Gas |
| 464 | 48-43008 | HDR Y-Pipe Ford F-150 15-19 V6-2.7L (tt) | Gas |
| 465 | 48-43009 | HDR Y-Pipe Ford F-150 15-16 V6-2.7L (tt) | Gas |
| 466 | 48-43010 | HDR Y-Pipe Ford F-150 15-19 V6-3.5L (tt) | Gas |
| 467 | 48-43010-YC | HDR Y-Pipe Ford F-150 15-20 V6-3.5L (tt) | Gas |
| 468 | 48-43010-YN | HDR Y-Pipe Ford F-150 15-20 V6-3.5L (tt) | Gas |
| 469 | 48-43011 | HDR Y-Pipe Ford F-150 15-16 V6-3.5L (tt) | Gas |
| 470 | 48-43015-1YC | HDR & Y-Pipe Ford F-150 15-20 V8-5.0L | Gas |
| 471 | 48-43015-1YN | HDR & Y-Pipe Ford F-150 15-20 V8-5.0L | Gas |
| 472 | 48-43015-YC | HDR & Y-Pipe Ford F-150 15-17 V8-5.0L | Gas |
| 473 | 48-43015-YN | HDR & Y-Pipe Ford F-150 15-16 V8-5.0L | Gas |
| 474 | 48-43020-HC | HDR DP Ford F-150 Raptor 17-19 V6-3.5L (tt) | Gas |

# Appendix A

| ROW | Part No. | Description | Fuel |
|-----|----------|-------------|------|
| 475 | 48-43020-HN | Ford F-150 Raptor 2017 V6-3.5L (tt) | Gas |
| 476 | 48-43026-RC | HDR Y-Pipe Ford F-150 15-19 V8-5.0L | Gas |
| 477 | 48-43026-RN | HDR Y-Pipe Ford F-150 15-19 V8-5.0L | Gas |
| 478 | 48-44001-YC | HDR & Y-Pipe GM Trucks 1500 09-13 V8 | Gas |
| 479 | 48-44002 | HDR Y-Pipe GM Truck/SUV 09-13 V8-4.8/5.3L | Gas |
| 480 | 48-44003-YC | HDR & Y-Pipe GM Trucks 14-19 V8-5.3L | Gas |
| 481 | 48-44004 | HDR Y-Pipe GM Trucks 1500 14-19 V8-5.3L | Gas |
| 482 | 48-44005-YC | HDR & Y-Pipe GM Trucks 14-19 V8-5.3/6.2L | Gas |
| 483 | 48-44005-YN | HDR & Y-Pipe GM Trucks 14-16 V8-5.3/6.2L | Gas |
| 484 | 48-44006-YC | HDR & Y-Pipe GM Trucks 09-13 V8-4.8/5.3L | Gas |
| 485 | 48-44140-RC | HDR Y-Pipe GM Trucks 1500 14-18 V8-6.2L | Gas |
| 486 | 48-44141-YC | HDR & Y-Pipe GM Trucks 14-18 V8-6.2L | Gas |
| 487 | 48-44142-YC | HDR & Y-Pipe GM Trucks 14-18 V8-6.2L | Gas |
| 488 | 48-46001-YC | HDR & Y-Pipe Toyota Tacoma 05-11 4.0L 2/4WD | Gas |
| 489 | 48-46006 | HDR Y-Pipe Toyota Tacoma 05-15 V6-4.0L 2/4WD | Gas |
| 490 | 48-46007-YN | HDR Y-Pipe Toyota FJ Cruiser 07-14 V6-4.0L | Gas |
| 491 | 48-46008-YC | HDR & C-Pipe Toyota Tundra 10-19 V8-5.7L | Gas |
| 492 | 48-46008-YN | HDR Y-Pipe Toyota Tundra 10-16 V8-5.7L | Gas |
| 493 | 48-46011-RN | HDR Y-Pipe Toyota Tacoma 16-20 V6-3.5L 2WD | Gas |
| 494 | 48-46012-HN | HDR Toyota Tacoma 16-20 V6-3.5L | Gas |
| 495 | 48-46107-YC | HDR & C-Pipe Nissan Titan 04-15 V8-5.6L | Gas |
| 496 | 48-46107-YN | Nissan Titan 04-15 V8-5.6L | Gas |
| 497 | 48-46114-YC | HDR & C-Pipe Nissan Titan XD 16-19 V8-5.6L | Gas |
| 498 | 48-46114-YN | HDR & C-Pipe Nissan Titan XD 16-19 V8-5.6L | Gas |
| 499 | 48-46214-YC | HDR & Y-Pipe Jeep Wrangler 07-11 V6-3.8L | Gas |
| 500 | 48-46303-HN | HDR DP BMW 328/428i (F30/32) 12-16 2.0L (t) | Gas |
| 501 | 48-48020-YC | HDR & Y-Pipe Jeep Wrangler (TJ) 00-06 4.0L | Gas |
| 502 | 48-48020-YN | HDR & Y-Pipe Jeep Wrangler (TJ) 00-06 4.0L | Gas |
| 503 | 48-48022-HC | HDR DP Jeep Wrangler (JK) 12-18 V6-3.6L | Gas |
| 504 | 48-48022-HN | Jeep Wrangler (JK) 12-17 V6-3.6L | Gas |
| 505 | 48-48025-HC | HDR DP Jeep Wrangler (JL) 18-19 3.6L 2/4Dr | Gas |
| 506 | 48-48025-HN | HDR DP Jeep Wrangler (JL) 18-19 3.6L 2/4Dr | Gas |
| 507 | 48C34101 | Chevrolet Corvette (C6) 05-13 V8-6.0L/6.2L/7.0L | Gas |
| 508 | 48C34102-YC | HDR X-Pipe Chevrolet Corvette C5 97-04 5.7L | Gas |
| 509 | 48C34102-YN | Chevrolet Corvette (C5) 97-04 V8-5.7L (LS1) | Gas |
| 510 | 48C34104-YC | HDR X-Pipe Corvette C6 05-08 V8-6.0/6.2 | Gas |
| 511 | 48C34104-YN | Chevrolet Corvette (C6) 05-08 V8-6.0L/6.2L (LS2/LS3) | Gas |
| 512 | 48C34106-YC | HDR X-Pipe Corvette Z06 C6 06-13 6.2/7.0L | Gas |
| 513 | 48C34106-YN | Chevrolet Corvette Z06/ZR1(C6) 06-13 V8-6.2L/7.0L (LS9/LS7) | Gas |
| 514 | 48C34108-YC | HDR X-Pipe Corvette C6 09-13 V8-6.2L | Gas |
| 515 | 48C34108-YN | Chevrolet Corvette (C6) 09-13 V8-6.2L (LS3) | Gas |
| 516 | 48C34110 | Chevrolet Corvette (C7) 14-16 V8-6.2L (LT1) | Gas |
| 517 | 48C34111-YC | HDR X-Pipe Corvette C7 14-19 V8-6.2L | Gas |

# Appendix A

| ROW | Part No. | Description | Fuel |
|---|---|---|---|
| 518 | 48C34111-YN | Chevrolet Corvette (C7) 14-16 V8-6.2L (LT1) | Gas |
| 519 | 48C34124 | Chevrolet Corvette (C5) 97-04 V8-5.7L (LS1) | Gas |
| 520 | 49-36316 | EXH 2.5 in RP BMW M3 (E9x) 08-13 V8-4.0L SS304 | Gas |
| 521 | 49-36319 | EXH 2.5 in RP BMW 328i (E92/93) 07-13 L6-3.0L | Gas |
| 522 | 49-36337-1C | EXH DP-B BMW M3/M4 15-20 L6-3.0L (tt) CF tip | Gas |
| 523 | 49-36337-B | BMW M3/M4 (F80/F82) 15-17 L6-3.0L(tt) S55 | Gas |
| 524 | 49-36337-C | BMW M3/M4 (F80/F82) 15-17 L6-3.0L(tt) S55 | Gas |
| 525 | 49-36337-P | BMW M3/M4 (F80/F82) 15-17 L6-3.0L(tt) S55 | Gas |
| 526 | 49-36343-B | EXH DP-B BMW M2 Competition 2019 L6-3.0L (tt) blk | Gas |
| 527 | 49-36343-C | EXH DP-B BMW M2 Competition 2019 L6-3.0L (tt) CF | Gas |
| 528 | 49-36343-P | EXH DP-B BMW M2 Competition 2019 L6-3.0L (tt) pol | Gas |
| 529 | 49-84001-B | EXH Polaris RZR XP 1000 15-20 | Gas |
| 530 | 49-84001-H | EXH Polaris RZR XP 1000 15-20 | Gas |
| 531 | 49-84002-B | EXH Polaris RZR XP Turbo 16-20 | Gas |
| 532 | 49-84002-H | EXH Polaris RZR XP Turbo 16-20 | Gas |
| 533 | 77-33001-PL | SCORCHER Pro PKG Ford Raptor 17-20 3.5L (tt) | Gas |
| 534 | 77-34001-PL | SCORCHER Pro Corvette Z06 C7 15-17 V8-6.2L sc | Gas |
| 535 | 77-34006-PL | SCORCHER Pro Chevrolet Corvette C7 14-18 | Gas |
| 536 | 77-46602-PL | SCORCHER GT PKG Honda Civic Type R 17-19 2.0L (t) | Gas |
| 537 | 77-46602-PM | SCORCHER GT PKG Honda Civic Type R 17-19 2.0L (t) | Gas |
| 538 | 46-10072 | MAN INT Dodge Dsl Trucks 07.5-18 L6-6.7L | Diesel |
| 539 | 48-36005-HC | HDR Scion FR-S/BRZ 13-19 H4-2.0L Street | Gas |
| 540 | 48-36307 | HDR BMW 3-Series (E9x) 06-13 L6-3.0L Street | Gas |
| 541 | 49-36321 | EXH 2.5 in RP BMW M3 (E9x) 08-13 V8-4.0L | Gas |
| 542 | 48-36312-1 | HDR DP BMW M3/M4/M2 Comp 15-19 L6-3.0L (tt) Street | Gas |
| 543 | 48-46003-1YC | HDR & Y-Pipe Toyota Tacoma 12-15 4.0L 2/4WD Street | Gas |
| 544 | 48-46003 | HDR Toyota Tacoma 12-15 V6-4.0L Street | Gas |
| 545 | 48-46001-HC | HDR Toyota Tacoma 05-11 V6-4.0L Street | Gas |
| 546 | 48-34130-YC | HDR C-Pipe Chevrolet Corvette C7 14-19 6.2L Street | Gas |
| 547 | 48-34129-YC | HDR X-Pipe Chevrolet Corvette C7 14-19 AT Street | Gas |
| 548 | 48-36401 | HDR Porsche C2S 991 12-16 H6-3.8L Street | Gas |
| 549 | 48-34131-PK | HDR X-Pipe/C-Pipe Corvette C7 14-19 6.2L AT Street | Gas |
| 550 | 48-36318-HC | HDR DP MINI Cooper S 09-13 L4-1.6L (t) Street | Gas |
| 551 | 49-36330-C | BMW M2 (F87) 16-17 L6-3.0L (t) N55 | Gas |
| 552 | 49-36330-P | BMW M2 (F87) 16-17 L6-3.0L (t) N55 | Gas |
| 553 | 49-36330-B | BMW M2 (F87) 16-17 L6-3.0L (t) N55 | Gas |
| 554 | 48-36802 | HDR Subaru WRX STI 04-19 H4-2.5L (t) | Gas |
| 555 | 48-36402 | HDR Porsche 911 Carrera 4 05-08 H6-3.6L | Gas |

# APPENDIX B

## **Appendix B**

### **Exempt Products**

- Air Filters – Direct Fit Original Replacement
- Pre-Filters, which have the purpose to provide additional filtration protection to capture particulate matter and extend the life of the filter between cleanings. They also provide protection against water ingestion. Use of this item typically reduces air flow by 3-5%.
- Fluid Filters
- Suspension Products
- Differential Covers, Transmission Pans, Oil Pans
- Radiators
- Torque Convertors
- Filter Pans and Covers
- Engine Covers
- Intake Covers
- Couplings
- Gaskets
- Cables
- Mounting Devices/Brackets
- Air Compressor Mounts
- Protective Plates
- Oil Caps
- Mufflers
- Exhaust Tips
- Resonators
- Diff Cover & Trans Pan Components
- Pulleys
- Turbine Elbows
- Chemicals
- Bolts, Nuts, Washers, Clamps, Hose Fittings

# APPENDIX C

## Appendix C

### Additional Criteria for Exempt Products

A Product is an Exempt Product if it meets one of the following criteria.

1.      The California Air Resource Board ("CARB") has issued an Executive Order ("EO") governing the Product; or

2.      Within the last two years, aFe has completed and filed a complete application ("Complete Application") for a CARB EO for the Product that meets the conditions set forth in Paragraphs a-d below.  A "Complete Application" means an application for a CARB Executive Order that has been submitted to CARB and contains all forms and information, including the results of emissions testing or engineering evaluation, required for CARB to fully evaluate and take final action on the application.

a.      The application has not been withdrawn;

b.      aFe has not received any communication from CARB indicating that the application for the Product is not or will not be approved;

c.      No documentation or information provided to CARB or to EPA related to the Product is materially incorrect or inaccurate; and

d.      The Product is not capable of being used with a Stock Configuration that is not referenced in the Defendant's Complete Application, including without limitation the Stock Configuration of a later model year vehicle.

# APPENDIX D

## Appendix D

### List Financial Information Provided

- aFe's year-to-date through June 30th financial statements for 2018-2020.

- aFe's year-end through December 31st financial statements for 2014-2019.

- aFe's Form 1120S federal income tax returns for 2014-2018.

- aFe's annual business plan documentation for 2019-2020.

- aFe's summary of ownership and annual compensation by executive, director, officer, or shareholder for 2014-2018.

- aFe's summary of shareholder distributions between January 1, 2014 and July 31, 2019.

- aFe's January 17, 2020 written responses to an information request from DOJ; the responses provided information about related business entities, related party transactions, recent business activities, and future business activities.

- aFe's written settlement communications to DOJ, as sent on August 17, 2020 and September 15, 2020.

- Jonathan Shefftz' "Supplemental and Rebuttal Expert Opinion on Economic Impact of Penalty Payment Regarding: Advanced Flow Engineering, Inc.," as submitted on August 14, 2020.

- Jonathan Shefftz' "Expert Opinion on Economic Impact of Penalty Payment Regarding: Advanced Flow Engineering, Inc.," as submitted on September 13, 2019.

# APPENDIX E

## **Appendix E**

### **Notice to Customers and Authorized Dealers**

[aFe LETTERHEAD]

Dear [Customer Name or Authorized Dealer Name]:

We are writing to make you aware of important changes in the type of products sold by Advanced Flow Engineering, Inc. ("aFe"). According to our records, you purchased certain aFe aftermarket performance products.  For purposes of this letter, these products are hereinafter referred to as "Subject Products."

As you may already know, starting in 2019 aFe began suspending all manufacturing and sales of Subject Products. aFe suspended those sales because EPA alleged that the manufacture and sale of Subject Products violated the Clean Air Act's prohibition against motor vehicle parts or components that allow for bypassing, defeating or rendering inoperative any emissions control system or element of design on a vehicle. *See* 42 U.S.C. §7522(a)(3).  Emissions control systems include the diesel particulate filter, exhaust gas recirculation system, catalysts, and onboard diagnostic system.

aFe recently entered into a civil judicial settlement with EPA to resolve disputes regarding its manufacturing, sale and installation of Subject Products. Although aFe has not admitted liability for violating the Clean Air Act, as part of the settlement it has agreed that, among other things, it will no longer (1) manufacture, sell, or install the Subject Products or (2) provide technical support (e.g., telephone support, online/chat support, warranty support) for the Subject Products. aFe has also agreed to provide you with this notice.

aFe's settlement with EPA specifically allows for aFe to continue selling products covered by Executive Orders issued by the California Air Resources Board ("CARB") or certain pending applications for CARB Executive Orders. aFe currently sells various CARB-certified products and more information concerning these CARB-certified products are available on aFe's website, www.aFe.com.

Sincerely,

[aFe Representative TBD]

# APPENDIX F

## Appendix F

### NOTICE OF CAA PROVISIONS

### CONSENT DECREE IN UNITED STATES

v.

### ADVANCED FLOW ENGINEERING

TO: ALL OFFICERS, DIRECTORS, AND EMPLOYEES OF ADVANCED FLOW ENGINEERING:

Advanced Flow Engineering ("aFe") has entered into a civil judicial settlement with the federal government regarding the manufacture, sale, and installation of certain aftermarket performance products that the United States Environmental Protection Agency ("EPA") alleged violated the Clean Air Act. Section 203 of the Clean Air Act prohibits the manufacture, sale, and installation of parts or components where a principal effect of the part or component is to bypass, defeat, or render inoperative emission control devices or elements of design, such as diesel particulate filters, exhaust gas recirculation systems, and onboard diagnostic system. aFe has agreed to cease manufacturing, selling and offering to sell these products.

**42 U.S. Code Section 7522**

**(a) Enumerated prohibitions**

The following acts and the causing thereof are prohibited—

(3)(A) for any person to remove or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter prior to its sale and delivery to the ultimate purchaser, or for any person knowingly to remove or render inoperative any such device or element of design after such sale and delivery to the ultimate purchaser; or

(3)(B) for any person to manufacture or sell, or offer to sell, or install, any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use

Anyone who undertakes any of the actions prohibited by Section 7522(a)(3)(A) or (B) of the Clean Air Act, or who offers for sale, sells, conveys, or otherwise transfers in any way the design, technology, or manufacturing processes or techniques used to manufacture the products identified above may be subject to a civil action under the Clean Air Act.